# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

JOHN REYNOLD FONTENOT,
Defendant and Appellant.

S247044

Second Appellate District, Division Seven
B271368

Los Angeles County Superior Court
NA093411

August 26, 2019

Justice Cuéllar authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin and Corrigan concurred.

Justice Kruger filed a concurring opinion.

Justice Liu filed a concurring and dissenting opinion, in which Justice Groban concurred.

PEOPLE v. FONTENOT

S247044


Opinion of the Court by Cuéllar, J.


Defendant John Reynold Fontenot was charged with completed kidnapping, but he was convicted of attempted kidnapping. The Court of Appeal affirmed, citing our decision in *People v. Martinez* (1999) 20 Cal.4th 225 (*Martinez*), which treated attempted kidnapping as a lesser included offense of completed kidnapping. Fontenot asks us to overrule *Martinez* and to hold that, despite a statutory provision authorizing conviction for attempted crimes even when only completed crimes are charged, he could not constitutionally be convicted of attempted kidnapping because that offense includes an element that completed kidnapping lacks. Accepting the former invitation but rejecting the latter, we affirm.

## I.

One fall evening in 2012, a youth named Destiny was babysitting a young child named Madeline. Madeline and two other girls were playing with dolls in the lobby of an apartment building, with Destiny looking on. Fontenot entered the lobby and approached the children. When Fontenot got close enough, he grabbed Madeline by the arm and started pulling her towards the door. Destiny intervened. She latched onto Madeline's other arm, struggling to wrest the child from Fontenot's grasp. As Destiny kicked Fontenot, the other two girls hit him with their dolls — so he let go. Destiny swept up Madeline in her arms

and told the other girls to run.  Fontenot fled, only to return a few hours later.  He was promptly arrested.

About three months later, the People charged Fontenot with kidnapping in violation of Penal Code section 207, subdivision (a).[1]  Tracking the statutory definition of the completed offense, the first amended information alleged that, "[o]n or about September 15, 2012," Fontenot "did unlawfully, forcibly and by instilling fear steal, take, hold, detain and arrest MADELINE C. in LOS ANGELES County, California and did take the said MADELINE C. into another country, state, county and another part of LOS ANGELES County."  (See § 207, subd. (a).)  The document also alleged that the victim was under the age of 14.  (See § 208, subd. (b).)  Fontenot pleaded not guilty and waived his right to a jury trial.

At Fontenot's subsequent bench trial in March 2016, the People argued in closing argument that he was guilty of completed kidnapping.  Fontenot's attorney acknowledged during her closing argument that, if not "for the intervening of Destiny and the other two little girls hitting [Fontenot] and him getting kicked, there might have been a completed crime" — but countered that those facts showed only a "classic attempt." Because there was "no substantial movement" of the victim, the evidence — though "sufficient to show an attempt" — was insufficient to prove the completed crime.  The trial court agreed with Fontenot's attorney.  Sitting as the trier of fact, it found "there was definitely a crime," though only "an attempt," not "a completed kidnapping."  Noting that attempted kidnapping, unlike completed kidnapping, is "a specific intent crime," the

---

[1]     All subsequent statutory references are to the Penal Code unless otherwise noted.

trial court expressly found Fontenot had formed the requisite specific intent. The trial court therefore found him "not guilty of the kidnapping but guilty of the attempt[ed] kidnapping." Fontenot's attorney responded, "Thank you."

The next day, Fontenot's attorney filed a letter brief challenging the verdict. She pointed out that the People neither charged Fontenot with, nor urged a conviction for, attempted kidnapping. Fontenot's attorney also argued that, because attempted kidnapping is "not a lesser included offense" of completed kidnapping, the trial court lacked any power to convict him of attempted kidnapping. Yet she acknowledged that "the facts might support such a conviction." The trial court rejected the challenge to its verdict. Under the "Three Strikes" law, a conviction for attempted kidnapping — like a conviction for completed kidnapping — exposed Fontenot to a life sentence. (See § 667, subd. (e)(2)(A).) But the trial court nonetheless agreed with the People that, at trial, Fontenot's attorney effectively invited a conviction for attempted kidnapping, instead of merely arguing that the evidence was insufficient to prove completed kidnapping. Fontenot ultimately received a Three Strikes sentence.

Fontenot appealed. In its unpublished decision, the Court of Appeal treated as controlling our conclusion in *Martinez* that "attempted kidnapping is a lesser included offense of kidnapping." So despite acknowledging that our subsequent decision in *People v. Bailey* (2012) 54 Cal.4th 740 (*Bailey*) "appears to undermine" *Martinez* by holding that attempted escape is not a lesser included offense of escape, the Court of Appeal affirmed. In view of "the apparent confusion in the intermediate appellate courts following *Bailey*," however, the Court of Appeal asked us to "provide further guidance with

regard to the issues surrounding attempted kidnapping." Taking the request from our appellate court colleagues to heart, we granted review.

## II.

Fontenot was charged with completed kidnapping under section 207, subdivision (a). That provision establishes that "[e]very person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) What Fontenot was convicted of is an *attempt* to commit kidnapping within the meaning of section 207, subdivision (a). But by itself, this discrepancy between charge and conviction does not warrant reversal. Nor do any other arguments Fontenot has properly presented in our court.

## A.

Under California law, a defendant may be convicted of an attempt even if the People charged only the completed crime. The relevant statute is Penal Code section 1159, and what it provides is this: "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, *or of an attempt to commit the offense*." (Italics added.) Citing section 1159, we upheld in *People v. Oates* (1904) 142 Cal. 12 (*Oates*) a conviction where the jury was instructed on, and found the defendant guilty of, an attempt to commit the completed offense charged in the information. (*Id.* at pp. 13-14 [describing as "erroneous" the "assumption that [a] defendant [may] not be convicted of an attempt to commit the crime

charged"].)  We approved such a procedure both before and after deciding *Oates*.  (See *People v. Defoor* (1893) 100 Cal. 150, 154 [before]; *People v. Vanderbilt* (1926) 199 Cal. 461, 464 [after].)

California is not alone.  Many jurisdictions have a similar statute or rule allowing criminal defendants to be convicted of an attempt when they are charged only with the completed offense.  In the federal system, for example, Federal Rules of Criminal Procedure, rule 31(c) provides (in relevant part) that a "defendant may be found guilty" of not just "an offense necessarily included in the offense charged," but also "an attempt to commit the offense charged."  (Fed. Rules Crim.Proc., rule 31(c)(1)-(2); see also *United States v. Resendiz-Ponce* (2007) 549 U.S. 102, 111, fn. 7 (*Resendiz-Ponce*) [noting that "a defendant indicted only for a completed offense can be convicted of attempt under Rule 31(c)"]; *U.S. v. Castro-Trevino* (5th Cir. 2006) 464 F.3d 536, 542; *U.S. v. Pino* (4th Cir. 1979) 608 F.2d 1001, 1003; *U.S. v. Marin* (2d Cir. 1975) 513 F.2d 974, 976; *Simpson v. U.S.* (9th Cir. 1952) 195 F.2d 721, 723.)  Similar provisions are on the books in at least three dozen states, along with the District of Columbia and the United States Virgin Islands as well.[2]  (See, e.g., Ga. Code § 16-4-3 ["A person charged with commission of a crime may be convicted of the offense of criminal attempt as to that crime without being specifically charged with the criminal attempt in the accusation, indictment, or presentment."]; Okla. Stat. tit. 22, § 916 ["The

---

[2]  Some jurisdictions, like California, have a general statute proscribing any attempt to commit a codified completed offense.  (See § 664.)  But federal law, for example, has no such general attempt statute and thus punishes only attempts that are themselves specifically enumerated in the criminal code.  (See *U.S. v. Castro-Trevino, supra,* 464 F.3d at pp. 541-542.)

jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, *or of an attempt to commit the offense.*" (Italics added)]; Ky. Rev. Stat. Ann. § 505.020(2)(a-b) ["A defendant may be convicted of an offense that is included in any offense with which he is formally charged.  An offense is so included when: (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; *or (b) It consists of an attempt to commit the offense charged . . . .*" (italics added)].)[3]

Courts across the country have held that such provisions raise no federal constitutional problem.  Several state high courts have addressed whether their relevant statute or rule gives defendants charged with a completed offense sufficient

---

[3]      (See also Alaska Rules Crim. Proc., rule 31(c); Ala. Code § 13A-1-9(a)(2); Ariz. Rules Crim. Proc., rule 21.4(a)(2); Ark. Code Ann. § 16-89-126; Colo. Rev. Stat. § 18-1-408(5)(b); Conn. Gen. Stat. § 54-60; D.C. Rules Crim. Proc. rule 31(c)(2); Fla. Rules Crim. Proc., rule 3.510(a); Idaho Code Ann. § 19-2312; Ind. Code § 35-31.5-2-168(2); Iowa Rules Crim. Proc., rule 2.22(3); Kan. Stat. § 21-5109(b)(3); Me. Rev. Stat. Ann. tit. 17-A, § 152(3-A); Mich. Comp. Laws § 768.32(1); Minn. Stat. § 609.04(1)-(2); Miss. Code Ann. § 99-19-5(1); Mo. Rev. Stat. § 556.046(3); Mont. Code Ann. § 46-16-607(1); N.M. Rules Crim. Proc., rule 5-611(D); Neb. Rev. Stat. § 29-2025; Nev. Rev. Stat. § 175.501; N.C. Gen. Stat. § 15-170; N.J. Stat. Ann. § 2C:1-8(d)(2); Ohio Rev. Code Ann. § 2945.74; Or. Rev. Stat. § 136.465; R.I. Gen. Laws § 12-17-14; S.D. Codified Laws § 23A-26-8; Tenn. Rules Crim. Proc., rule 31(d)(1)(B); Tex. Code Crim. Proc. Ann. art. 37.09(4); V.I. Rules Crim. Proc. rule 31(c)(2); Vt. Stat. Ann. tit. 13, § 10; Utah Code Ann. § 76-1-402(3)(b); Va. Rules Crim. Proc., rule 3A:17(c); Wash. Rev. Code § 10.61.003; W. Va. Code § 62-3-18; Wis. Stat. § 939.66(4); Wyo. Rules Crim. Proc., rule 31(c).)

notice that they may instead face conviction for an attempt. And all those courts have concluded the answer is yes. (See, e.g., *State v. Young* (Vt. 1981) 433 A.2d 254, 258 [holding that such a provision prevented "unfair surprise"]; *Patton v. State* (Miss. 2012) 109 So.3d 66, 81 [similar]; see also *Com. v. Sims* (Pa. 2007) 919 A.2d 931, 941-942 [relying in part on Model Pen. Code, § 1.07, subd. (4)(b) to hold that a defendant convicted of, but not charged with, an attempt to commit the charged offense suffered no constitutional violation — even without a state statute on point]; *State v. LeFurge* (N.J. 1986) 502 A.2d 35, 41 & fn. 8 (*LeFurge*) [holding that a state statute allowing convictions for conspiracy to commit a charged offense gave the defendant "adequate notice"].) So has the only federal appellate court to confront an analogous constitutional challenge related to Federal Rules of Criminal Procedure, rule 31(c). (See *United States v. Brozyna* (2d Cir. 1978) 571 F.2d 742, 746 (*Brozyna*).) "The courts," in other words, "are in general agreement that an attempt conviction may be had on a charge of the completed crime." (2 LaFave, Substantive Criminal Law (3d ed. 2018) § 11.5(c) (LaFave).) Indeed, to our knowledge no federal appellate court has concluded the federal Constitution dictates that an attempt conviction is necessarily invalid if the defendant was charged only with the completed offense. Neither has any state high court.

True: courts have offered a range of explanations for why a defendant may be convicted of an attempt despite being charged only with the completed crime. Some have cited case law in their jurisdictions to argue that an attempt is invariably a lesser included offense of the completed crime. (See, e.g., *State v. Young, supra,* 433 A.2d at pp. 542-543.) Others have looked instead to the notice provided by the terms of their relevant

state statute or rule. (See, e.g., *Patton v. State*, *supra*, 109 So.3d at p. 81, citing *Eakes v. State* (Miss. 1995) 665 So.2d 852, 860; *State v. March* (Conn.App. 1995) 664 A.2d 1157, 1161.) Despite such distinctions, not one state high court or federal appellate court has reversed an attempt conviction simply because the defendant was charged only with the completed crime.

We decline Fontenot's invitation to be the first. The Sixth Amendment to the United States Constitution accords criminal defendants the right "to be informed of the nature and cause of the accusation" against them. (U.S. Const., 6th Amend.; see *People v. Seaton* (2001) 26 Cal.4th 598, 640 (*Seaton*).) Federal due process principles likewise " 'require[] that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' " (*Seaton*, at pp. 640-641, quoting *People v. Jones* (1990) 51 Cal.3d 294, 317.)[4] But as we see it, the whole point of section 1159 — and provisions like it — is to serve these constitutional commands.

Section 1159 informs criminal defendants charged with a completed crime that they must prepare to defend against not just that crime and "necessarily included" offenses, but also against "an attempt to commit" the completed crime. By establishing that background rule for all such charges, the statute is meant to provide notice across the board. (See *Brozyna*, *supra*, 571 F.2d at p. 746 [noting that Fed. Rules Crim. Proc., rule 31(c) made clear the defendant needed "to

---

[4] The California Constitution has a similar requirement. (*Seaton*, *supra*, 26 Cal.4th at pp. 640-641.) But Fontenot grounds his claim solely in the federal Constitution, so we focus our analysis there.

prepare to defend not only against that charge but also against whatever necessarily included offenses *and attempts* she could have been convicted of under" the rule (italics added)]; *LeFurge, supra,* 502 A.2d at p. 41 [describing similar provision as providing "express notice to defendant[s]"]; *State v. March, supra,* 664 A.2d at p. 1161 [similar].)

What's more, any attempt bears an extremely close relationship to the completed crime. Attempts, after all, are defined as incomplete efforts to commit a completed crime. (See, e.g., § 21a ["An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."].) This tight nexus might explain why provisions like section 1159 are so common across the United States. So beyond what section 1159 reveals as a statutory signpost here, prohibitions on criminal attempts are premised on — and in some sense convey — an intuitive idea: someone whose actions and intentions fall just short of constituting a completed crime shouldn't necessarily get off scot-free. With that double-barreled forewarning in place, we conclude that a charging document enumerating the elements of a completed crime and specifying the time and place of the crime's alleged commission gives defendants — at least in most cases — constitutionally sufficient notice that they may be convicted of an attempt to commit the crime charged. (*Resendiz-Ponce, supra,* 549 U.S. at p. 108.)

## B.

What section 1159 does not purport to do — and what it constitutionally could not do — is let the People earn a criminal conviction without proving every element of the offense beyond a reasonable doubt. (See *People v. Flood* (1998) 18 Cal.4th 470,

523, citing *Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278.) Nothing of the sort happened here. To be sure, an attempt to commit kidnapping under section 207, subdivision (a) has an intent element that the completed crime lacks. But in this case the trial court, sitting as the trier of fact, recognized as much and made an express finding on that additional element.

**1.**

The People concede that attempted kidnapping is not a lesser included offense of completed kidnapping, given the context of section 207, subdivision (a) and our decision in *Bailey* We agree.[5]

To determine whether one offense is a lesser included offense of another, we have at times looked to the accusatory pleading in the case before us, as well as to the statutory elements of the two offenses at issue. (*People v. Robinson* (2016) 63 Cal.4th 200, 207.) But because the first amended information charging Fontenot with completed kidnapping merely "incorporate[d] the statutory definition of the charged offense without referring to the particular facts" in detail, we "must rely

---

[5] In Justice Kruger's view, "there is no real reason for us to decide the issue here, overruling precedent in the process." (Conc. opn. of Kruger, J., *post*, at p. 2.) But whether attempted kidnapping is a lesser included offense of kidnapping is precisely the issue on which we granted review and an issue on which even the Court of Appeal asked us to provide guidance. That we also hold that section 1159 provides constitutionally sufficient notice does not detract from the need for guidance on this issue. (See *Bank of Italy Nat. etc. Assn. v. Bentley* (1933) 217 Cal. 644, 650 ["It is well settled that where two independent reasons are given for a decision, neither one is to be considered mere *dictum* . . . . The ruling on both grounds is the judgment of the court and each is of equal validity."]

on the statutory elements" alone. (*Ibid.*) So here we need only apply the so-called "elements test." (*Ibid.*) What that test requires is determining whether a given crime's elements together constitute a mere subset of another crime's elements. (*Ibid.*) If the answer is yes, the greater offense " ' " 'cannot be committed without also necessarily committing [the] lesser offense.' " ' " (*Ibid.*, quoting *Bailey*, *supra*, 54 Cal.4th at p. 748.) Which means that, so long as some additional evidence is required to support a conviction for the former, the latter is a lesser *included* offense. (*Robinson*, at p. 207.)

Our decision in *Bailey* likewise hinged solely on a comparison of the statutory elements of the two offenses at issue in that case. (*Bailey*, *supra*, 54 Cal.4th at pp. 751-752.) There, we held that attempted escape is not a lesser included offense of completed escape. (*Id.* at p. 749.) To commit completed escape, we explained, the mental state required is only what we and other courts have often called "general criminal intent": if "the defendant intentionally d[id] the act which constitutes the crime," the government need not prove his precise purpose for doing it. (*Ibid.*) By contrast, "attempt to escape requires a specific intent to escape" — that is, a conscious design or purpose to avoid confinement. (*Ibid.*; see also *People v. Pool* (1865) 27 Cal. 572, 585 (opn. on denial of rehearing) [defining "specific intent" as a "design or purpose" of achieving a particular — usually harmful — end]; *People v. Davis* (1995) 10 Cal.4th 463, 518-519, fn. 15 [observing that a "crime is characterized as a 'general intent' crime when the required mental state entails only an intent to do the act that causes the harm," but it "is characterized as a 'specific intent' crime when the required mental state entails an intent to cause the

resulting harm"].) The latter offense therefore calls for a more searching inquiry into the defendant's mental state.

We ourselves have lamented that the distinction between specific and general intent is "notoriously difficult to define and apply" — but the distinction between intent of a more specific or more general nature nevertheless can be meaningful. (*People v. Hood* (1969) 1 Cal.3d 444, 456 (*Hood*).) Case in point: evidence that the defendant in *Bailey* "was voluntarily intoxicated or intended to return [to prison]" would bear on whether he was guilty of attempted escape, but not on whether he was guilty of completed escape. (*Bailey*, at p. 749; see also *Carter v. United States* (2000) 530 U.S. 255, 268 [distinguishing " 'specific intent' " from " 'general intent' " on the ground that the former, but not the latter, demands inquiry into whether the defendant had a purpose or goal to cause a particular harm when performing a set of physical acts].)[6]

---

[6] It may be true in some sense that as a purely "abstract proposition, every completed crime necessarily involves an attempt to commit it." (*People v. Vanderbilt, supra*, 199 Cal. at p. 463; see conc. opn. of Kruger, J., *post*, at p. 5.) But that statement risks simply assuming its conclusion by implying that a completed crime always includes an attempt to commit that crime, because it does (rather than acknowledging that this question is part of what's at issue in the case), or eliding the distinction between the colloquial use of the word "attempt" and the use of it as a term of art to describe a certain category of inchoate criminal offenses. In any event, even if we embraced the abstract proposition, we see no clear practical basis for a cross-cutting rule based on this proposition. As we observed in *Bailey*, such a rule would not apply "where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense." (*Bailey, supra*, 54 Cal.4th at p. 753.)

*Hood* expressly recognized the meaningful "difference in mental activity" required for "crimes that have traditionally been characterized as crimes of specific intent" as compared to those traditionally characterized as crimes of general intent. (*Hood, supra,* 1 Cal.3d at p. 458.) That difference, as we've reiterated today, is the distinction between (i) merely committing a physical act intentionally and (ii) engaging in goal-oriented, purposive thinking. (See *People v. Williams* (2001) 26 Cal.4th 779, 786 [distinguishing " 'an intent to commit [an] act' " from "a specific intent to obtain some further objective" and concluding the former falls short of describing "the traditional formulation of criminal attempt later codified in section 21a, which requires a specific intent"].) And as we held in *Hood,* that distinction "is sufficient to justify drawing a line between" those two types of crimes for, among other things, "considering evidence of intoxication in the one case and disregarding it in the other." (*Hood,* at p. 458.) So under our precedents, the kind of "specific intent" at issue in attempted kidnapping is indeed a "heightened mental state" distinct from a mere intent to commit the physical acts constituting the completed crime.[7] (*Bailey, supra,* 54 Cal.4th at p. 751; see also *Williams,* at p. 786.)

---

[7] Justice Kruger looks to Chief Justice Traynor's statement in *Hood, supra,* 1 Cal.3d 444, that "[t]here is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do that same act in the future." (*Id.* at p. 457.) Based on this discussion, Justice Kruger concludes that general intent and specific intent "will generally be indistinguishable" when a crime is defined only in terms of committing a particular act. (Conc. opn. of Kruger, J., *post,* at p. 5.) But what's at issue here is not whether it makes sense to draw a distinction between an intent to do an act already

Attempts require a heightened mental state for good reason. As we explained in *Bailey*, requiring a heightened mental state for attempt liability helps distinguish, for example, "the act of an attempt to escape" from the "same act of a violation of prison rules" or even purely " 'innocuous behavior.' " (*Bailey*, *supra*, 54 Cal.4th at p. 751, quoting *U.S. v. Bailey* (1980) 444 U.S. 394, 405.) When someone intentionally commits an act constituting a completed felony, for example, that person's culpability is often obvious because "the completed act is itself culpable conduct." (*U.S. v. Gracidas-Ulibarry* (9th Cir. 2000) 231 F.3d 1188, 1193 (en banc).) But when someone intentionally commits an act that merely *could* be a step towards committing a certain completed crime, "uncertainty" about the person's culpability — or at least the contours of that culpability — persists. (*Ibid.*)

To ensure that only those whose intentions and actions made them a pronounced threat to accomplish what a given criminal statute prohibits may be found criminally liable, courts impose a "heightened intent requirement" for attempts — even when the completed crime requires a less demanding mental state. (*U.S. v. Gracidas-Ulibarry, supra*, 231 F.3d at p. 1193.) In effect, the higher bar serves as a bulwark against convicting someone of attempting to accomplish something they never set

performed and an intent to do the same act in the future, where the individual in question happens to have an intent that fulfills the requirement for both the completed offense and the attempt. What's at issue is whether we should presume that the only conceivable kind of intent that would make an individual guilty of a completed offense is the kind of intent that would also be enough to allow for conviction of the inchoate offense of attempt. That's not a question that has an elegant metaphysical answer.

out to do.  "Because the act constituting a criminal attempt 'need not be the last proximate or ultimate step toward commission of the substantive crime,' criminal attempt has always required 'a specific intent to commit the crime.' " (*People v. Williams, supra,* 26 Cal.4th at p. 786, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 376.)   And in California, the Legislature codified that safeguard:  under section 21a, an attempt conviction requires "*specific intent* to commit the [completed] crime," even if the underlying offense is a general intent crime.  (Italics added.)

*Bailey* concerned this same principle.  There, we noted it would be difficult to determine whether a prisoner who "stole a pair of wire cutters" had at that point attempted to escape. (*Bailey, supra,* 54 Cal.4th at p. 751.)  Yes, the prisoner might have intended to use them "to cut through the outer perimeter fence of the prison institution." (*Ibid.*)  And had he done that and run off, there would be no doubt he committed the completed crime of escape. (*Ibid.*)  But the prisoner might also have intended to use the wire cutters "as a weapon to attack another inmate." (*Ibid.*)  So if he were apprehended soon after stealing them, one couldn't know whether he attempted to escape — not without more information about what specifically he had planned to do with the wire cutters. (*Ibid.*)  Hence the "specific intent requirement" for attempted escape. (*Ibid.*)

When it comes to the elements of completed kidnapping and attempted kidnapping under section 207, subdivision (a), we see a similar distinction.  We've described completed kidnapping under that provision as a "general intent crime." (*People v. Prieto* (2003) 30 Cal.4th 226, 257).  Conviction under section 207, subdivision (a) requires the defendant to intentionally perform the physical acts constituting the crime. And because any criminal conviction in California (with a few

exceptions not applicable here) requires, as a threshold matter, "a union of act and wrongful intent" (*People v. Mayberry* (1975) 15 Cal.3d 143, 154 (*Mayberry*)) under section 20, we have further concluded that someone with an honest and reasonable belief that the victim "voluntarily consented to accompany him" (*Mayberry*, at p. 155) is not guilty of completed kidnapping. (See also § 26, class Three [providing that someone is not guilty of a crime if they "committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent"].) So to satisfy a basic requirement for criminality — that a defendant's mental state be culpable in some minimal way — completed kidnapping under section 207, subdivision (a) requires not just the intentional commission of physical acts, but also — at least — criminal negligence as to consent. (*Mayberry*, at p. 154, citing *People v. Vogel* (1956) 46 Cal.2d 798, 801, fn. 2.) Voluntary intoxication, moreover, does not bear on whether a defendant formed the intent necessary to be guilty of completed kidnapping. (*People v. Hernandez* (1988) 46 Cal.3d 194, 209-211.)

An attempt to commit kidnapping under section 207, subdivision (a), by contrast, is most consistent with what our case law tends to describe as a "specific intent" crime. It requires that the defendant act with a conscious design or purpose to accomplish what the provision punishing the completed crime prohibits (or — stated otherwise — to bring about the harmful result that statute proscribes): taking and carrying away the victim a substantial distance, by force or fear, and without consent. (§ 207, subd. (a).) So here, as in *Bailey*, "the attempted offense includes a particularized intent that goes beyond what is required by the completed offense." (*Bailey, supra,* 54 Cal.4th at p. 753.) For example, while voluntary

intoxication does not matter for whether someone is guilty of completed kidnapping, it *does* matter for whether someone is guilty of attempted kidnapping. (See *People v. Williams* (1988) 44 Cal.3d 883, 908 [noting that "alcohol intoxication" may negate "specific intent to commit" kidnapping].) So it's possible for an intoxicated defendant to commit completed kidnapping under section 207, subdivision (a) without necessarily committing attempted kidnapping along the way. And while completed kidnapping under that provision requires mere criminal negligence as to consent to satisfy the baseline requirement for criminality of (almost) any kind (*Mayberry*, *supra,* 15 Cal.3d at p. 154), attempted kidnapping requires the defendant to purposefully inflict whatever degree of force or fear is required to overcome the victim's will (see §§ 21a, 207, subd. (a); cf. *Davis*, *supra*, 10 Cal.4th at p. 509.). Put another way: we agree with the "prevailing view" that an attempt "cannot be committed by recklessness or negligence" — "even if the underlying crime can be so committed." (LaFave, *supra*, § 11.3, p. 293.)

Of course, the Legislature may conclude it makes sense to punish negligent or reckless conduct in this context, irrespective of whether a particular harm is brought about — and subject to constitutional constraints, it can criminalize such conduct. (See LaFave, supra, § 11.3(b), p. 298.) While enactment of such an offense would functionally overlap with the kind of attempt Justice Kruger envisions — where the required mens rea is merely recklessness or negligence — there's no basis in our law to presume that attempt offenses require mere negligence or recklessness. To the contrary: such a conclusion cuts sharply against the distinctions we've repeatedly drawn between the intent that must be shown to establish a defendant's guilt of a

completed offense, and the intent that establishes attempt. (See *Bailey*, *supra*, at pp. 750-751; *Williams*, *supra*, 26 Cal.4th at p. 786.) Other courts have drawn similar distinctions, too. (See, e.g., *United States v. Bailey*, *supra*, 444 U.S. at p. 405 [explaining that "inchoate offenses such as attempt" require a "heightened mental state" as compared to completed offenses]; *U.S. v. Gracidas-Ulibarry*, *supra*, 231 F.3d at p. 1192 [similar].)

The additional intent element required both for attempted escape and for attempted kidnapping underscores why we decided *Bailey* the way we did. A reviewing court may not reduce a conviction for completed escape to one for attempted escape, we explained in *Bailey*, because doing so would gloss over the heightened intent requirement that, for the latter offense, must be proved beyond a reasonable doubt. (*Bailey*, *supra*, 54 Cal.4th at p. 752.) And that additional element suggests we were wrong in *Martinez* to reduce on appeal a conviction for completed kidnapping to one for attempted kidnapping.

In neither *Bailey* nor *Martinez* was the attempt a lesser included offense of the completed crime under the elements test. Moreover, in *Bailey*, the case was "tried solely as an escape" and "the trial court did not instruct on attempt to escape . . . ." (*Bailey*, *supra*, 54 Cal.4th at p. 752.) The jury, then, "was never required to make a finding of specific intent to escape" when it returned a guilty verdict of the completed offense. (*Ibid.*) *Martinez* is scarcely different. That case was tried solely as a completed kidnapping under section 207, subdivision (a). (See *Martinez*, *supra*, 20 Cal.4th at p. 230.) And a conviction for attempted kidnapping was not contemplated until appeal. (*Id.* at p. 241.) So the jury was never asked to find that the defendant formed the specific intent to kidnap notwithstanding,

for example, evidence he was drunk at the time of the alleged crime. (*See id.* at p. 229.) And because only the general intent crime of completed kidnapping under section 207, subdivision (a) was litigated at trial, the defendant had no reason to build a defense around voluntary intoxication. Yet our decision to reduce on appeal the defendant's conviction for completed kidnapping to attempted kidnapping did not rest on a reasoned consideration of these complexities. It relied instead on the assumption that an attempt was always a "lesser included offense" of the completed crime. (*Martinez*, at p. 241). So we overrule that portion of *Martinez*.

Yet we do not supplant *Martinez*'s across-the-board assumption with an equally sweeping conclusion of our own. Our decision does not mean all attempts are created equal, any more than all completed offenses are. Attempts may be lesser included offenses of the completed crime — and, at the very least, application of the elements test may not always be straightforward. (See *Bailey, supra*, 54 Cal.4th at p. 753.) Look no further than the very criminal statute at issue here. Other variations of kidnapping set out in different subdivisions of section 207 have distinct elements, including as to the mental state required for a conviction. Subdivision (c), for example, establishes as a separate offense kidnapping that is: (1) achieved by force, fear, *or various forms of deception*; and (2) "*for the purpose and with the intent to* sell [the victim] into slavery or involuntary servitude, or otherwise to employ" the victim against his or her will. (§ 207, subd. (c), italics added.)

And while subdivision (e) does not itself establish a stand-alone offense, it provides that — for the various "types of kidnapping [offenses] requiring force" established in other subdivisions of section 207, including kidnapping under

subdivision (a) — "the amount of force required to kidnap an unresisting infant or child is the amount of physical force required to take and carry the child away a substantial distance *for an illegal purpose or with an illegal intent.*" (§ 207, subd. (e), italics added; see also *People v. Oliver* (1961) 55 Cal.2d 761, 768.) That latter wrinkle could affect whether the attempted kidnapping of a young child is a lesser included offense of the completed crime. (See conc. opn. of Kruger, J., *post*, at pp. 13-17.) Indeed, these are precisely the kind of " 'intricacies and doctrinal divergences' " (*Bailey, supra*, 54 Cal.4th at p. 753, quoting *Moorman v. Thalacker* (8th Cir. 1996) 83 F.3d 970, 974) that, as we explained in *Bailey*, cut against " 'generaliz[ing] in the law of attempt' " (*Bailey*, at p. 753, quoting *U.S. v. Berrigan* (3d Cir. 1973) 482 F.2d 171, 187).

True: this case involved a young victim. But at no point have the People relied on subdivision (e) of section 207 — nor does the briefing before us address any subdivision of section 207 other than (a). So whether subdivision (e) means that attempted kidnapping is a lesser included offense of the completed crime in cases involving young victims is a question not properly presented here. Accordingly, we needn't express any view on that narrow issue.[8] Our decision today concerns

---

[8] Justice Kruger is quite right that the People need not expressly plead a violation of subdivision (e) of section 207 when they charge a defendant with a kidnapping offense. (See conc. opn. of Kruger, J., *post*, at p. 16, citing *People v. Westerfield* (2019) 6 Cal.5th 632, 715.) But that's somewhat beside the point in this case. What matters for present purposes is that this issue is not central to the question on which we granted review, and we lack briefing about the effect (if any) of subdivision (e). Nor was that issue addressed at oral argument. Because we

instead the question addressed in the briefing before us: whether, putting aside potential complications caused by the application of subdivision (e), attempted kidnapping under subdivision (a) is a lesser included offense of completed kidnapping. We conclude the answer to that question is no.

**2.**

Yet this case differs from *Bailey* and *Martinez* in one crucial respect. The factfinder in those jury trials (the jury) never found the specific intent required for an attempt conviction; the jury was not even instructed on it. (See *Bailey*, *supra*, 54 Cal.4th at p. 752; *Martinez*, *supra*, 20 Cal.4th at pp. 230, 241.) So in *Bailey* we held that the defendant's conviction at trial for the completed offense could not be changed on appeal to a conviction for an attempt. And we erred in *Martinez* by not reaching a similar result. But the factfinder in Fontenot's bench trial (the judge) recognized that a conviction for attempted kidnapping requires specific intent — and he expressly made a finding to that effect. Accordingly, unlike in *Bailey* and *Martinez*, the factfinder in this case indeed found every element necessary to support an attempt conviction.

That distinction matters. The constitutional defect lurking in the attempt convictions contemplated only on appeal in *Bailey* and *Martinez* does not apply to the attempt conviction

_____

lack input from the parties and need not resolve any question about subdivision (e) in order to decide this case, we decline to address it. (See, e.g., *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 [noting that we generally decline to consider arguments not raised in the briefs].) So contrary to Justice Kruger's suggestion, nothing about our decision today calls *Westerfield* into question.

imposed at Fontenot's trial. As a result, our conclusion that attempted kidnapping is not a lesser included offense of completed kidnapping in the context of section 207, subdivision (a) does not — standing alone — warrant reversal of Fontenot's conviction for the former crime.

## C.

We have concluded that section 1159 means what it says, and that the statute, so read, is constitutional. And consistent with our decision in *Bailey*, attempted kidnapping is not a lesser included offense of completed kidnapping, at least in the context of section 207, subdivision (a). At trial, moreover, the factfinder found every element of attempted kidnapping beyond a reasonable doubt. So contrary to Fontenot's contentions, we are not convinced that his conviction must be reversed.

To be sure, Fontenot cites language from our precedents that might appear in some tension with what we hold today. A single sentence in *Bailey* opined that we have "made the qualification that under section 1159, ' "[a] defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime." ' " (*Bailey*, *supra*, 54 Cal.4th at p. 752, quoting *People v. Sloan* (2007) 42 Cal.4th 110, 116.) And in cases before *Bailey* we made similar, seemingly absolute assertions about the constitutionality of convicting a defendant for committing an uncharged crime. (See, e.g., *Sloan*, at p. 116; *People v. Reed* (2006) 38 Cal.4th 1224, 1227; *People v. Toro* (1989) 47 Cal.3d 966, 973; *People v. Lohbauer* (1981) 29 Cal.3d 364, 367; *People v. West* (1970) 3 Cal.3d 595, 612; *In re Hess* (1955) 45 Cal.2d 171, 174-175.)

But because we do not treat cases as "authority for propositions not considered," the sweeping assertions on which

Fontenot relies do not dictate our decision in this case about the meaning and constitutionality of section 1159. (*In re Tartar* (1959) 52 Cal.2d 250, 258; see also *People v. Ghobrial* (2018) 5 Cal.5th 250, 285.) *Bailey, supra,* 54 Cal.4th 740, addressed only the power of an appellate court to reduce a conviction for escape to a conviction for attempt, where the trial court did not instruct on attempt to escape. Unlike here, "concerns about notice [we]re not at issue . . . ." (*Id.* at p. 752.) Instead, what concerned us in *Bailey* was the fact that the failure to instruct the jury regarding the specific intent required for an attempt to escape meant that the jury "did not impliedly find all the elements of the attempt offense." (*Ibid.*) Neither *Bailey* nor any of those prior decisions from our court confronted a situation like this one: a case where the defendant was charged with a completed offense, but at trial the factfinder nevertheless considered, and found every element of, an attempt. (In fact, other than *Bailey*, none of those decisions concerned attempts at all.) The only time we have confronted circumstances at all like those here was in *Oates*, and there we *upheld* the defendant's conviction for an attempt.[9] (*Oates, supra,* 142 Cal. at p. 14.)

The dissent's view that a person might nonetheless have reasonably relied on these statements — not holdings —

---

[9] The dissent faults our citation of *Oates* on the ground that *Oates* addressed whether section 1159 had been properly enacted. Therefore, the dissent contends, *Oates* could not have given Fontenot notice that he could be convicted of an uncharged attempt. (Conc. & dis. opn. of Liu, J., *post*, p. 6.) But this court subsequently cited *Oates* for the "well-established principle[]" that pursuant to section 1159, a person may be convicted of an attempt to commit a charged crime even if not charged with an attempt of the charged crime. (*People v. Vanderbilt, supra*, 199 Cal. at p. 464.)

concerning the propriety of convictions for uncharged crimes in our prior cases assumes that a person would reasonably adopt an atextual reading of section 1159. More particularly, taking those assertions at face value would strip the statutory language "or of an attempt to commit the offense" of any meaning whatsoever. (*Ibid.*) But whenever reasonably possible, courts avoid reading statutes in a way that renders "meaningless" language the Legislature has chosen to enact. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1010.) Moreover, as we've explained, many jurisdictions permit defendants charged only with a completed offense to be convicted of an attempt — and no federal appellate court or state high court has condemned the practice.

Even Fontenot himself acknowledges that section 1159 is "capable of providing" constitutionally adequate notice to defendants that they may be convicted of an attempt even if they are charged only with the completed offense. Yet, in his view, that is not the end of the matter. Fontenot counters that, even if the language in our prior decisions was technically dicta, he had enough cause for confusion at the time of trial to justify reversal of his conviction on constitutional grounds. And in addition to cases from our court, Fontenot cites decisions of the Court of Appeal to support that fallback argument, including most notably *People v. Braslaw* (2015) 233 Cal.App.4th 1239 and *People v. Hamernik* (2016) 1 Cal.App.5th 412.

In *Braslaw*, which was decided before Fontenot's trial, the Court of Appeal held that trial courts have "no sua sponte duty to instruct on attempt unless it is also a lesser included offense." (*People v. Braslaw*, supra, 233 Cal.App.4th at p. 1247.) *Braslaw* echoed *Bailey*'s purported " 'qualification' " of section 1159 (*Braslaw*, at p. 1247), but the case did not involve any issue regarding the authority to convict of an uncharged attempt. In

*Hamernik*, the Court of Appeal reversed an attempt conviction solely because the defendant was charged with the completed offense but the attempt — though presented to the jury — "was not included in the information." (*People v. Hamernik*, supra, 1 Cal.App.5th at pp. 426-427.) *Hamernik* cited *Bailey* only in connection with its analysis of whether the crime of attempt was a lesser included offense of the charged crime. The *Hamernik* court was apparently not aware of, much less confused by, *Bailey*'s dicta on which Fontenot relies. In fact, *Hamernik* did not even acknowledge section 1159, perhaps because the People focused on section 1009, which addresses courts' authority to allow an amendment of charges after the defendant has responded to the original pleading. Moreover, Fontenot could not have relied on *Hamernik*'s erroneous holding because *Hamernik* was decided after the trial in this case. But Fontenot argues that the court's conclusion nevertheless demonstrates that litigants, like the Court of Appeal, wouldn't have understood that a defendant could be convicted of an attempt despite being charged only with a completed crime. So according to Fontenot, the state of California case law at the time of his trial so muddled the meaning of section 1159 that his conviction cannot stand.

We reject Fontenot's fallback argument. Just as our dicta in *Bailey* and other decisions do not control our decision today, Fontenot could not reasonably rely on those statements in preparing for trial in the face of section 1159's unambiguous and clearly relevant language, and the nearly ubiquitous charging practice it establishes. Indeed, we made clear in *Bailey* that "concerns about notice" were "not at issue" there. (*Bailey*, *supra*, 54 Cal.4th at p. 752.) And, as discussed above, not one of our

other cases with sweeping, seemingly absolute statements about convictions for uncharged crimes involved an attempt.

These circumstances — a defendant's reliance on dicta that is inconsistent with a clear statute and common practice — present a stark contrast to the circumstances in *Moss v. Superior Court* (1998) 17 Cal.4th 396 (*Moss*), on which the dissent relies. (Con. & dis. opn. of Liu, J., *post*, pp. 2-3.) In *Moss*, we considered whether constitutional prohibitions on involuntary servitude and imprisonment for debt precluded a judgment of contempt based on a parent's failure to pay child support when the parent's inability to pay results from the parent's willful failure to seek and accept available employment. Our earlier opinion in *Ex parte Todd* (1897) 119 Cal. 57, which held that courts had no power to impose contempt sanctions for a failure to pay *spousal* support when the inability to pay resulted from a willful failure to obtain employment, had been interpreted to be based on these constitutional prohibitions. We held in *Moss* that these constitutional prohibitions do not bar the imposition of contempt sanctions for the failure to pay child support where the failure is based on the parent's willful failure to seek and accept available employment. We also disapproved *In re Feiock* (1989) 215 Cal.App.3d 141, which held that the petitioner bore the burden of proof with respect to the issue of whether the contemnor had the ability to pay child support. (*Moss, supra*, 17 Cal. 4th at p. 428.)

But we did not apply our holdings to contemnor *Moss*, because those holdings could "reasonably be seen as both an unanticipated expansion of the law of contempt in the child support context and a change in the evidentiary burden of which [Moss] has no notice at the time of trial." (*Moss, supra*, 17 Cal.4th at p. 429.) We acknowledged that *Ex parte Todd, supra*,

119 Cal. 57, on which the contemnor relied, involved spousal rather than child support, but observed that "no basis for distinguishing child support orders was apparent at the time *Todd* was decided . . . ." (*Moss*, at p. 429.) We also declined to assume that the enactment of a statute authorizing a court to require a parent to demonstrate efforts to find employment would have apprised the contemnor that *Todd*, which was based on substantive constitutional restrictions, no longer applied. (*Moss, supra*, 17 Cal.4th at p. 429.) Finally, the contemnor "reasonably relied on *In re Feiock*," *supra*, 215 Cal.App.3d 141. (*Moss, supra*, 17 Cal.4th at p. 429.) In sum, the contemnor in *Moss* reasonably relied on indistinguishable precedent that was based on constitutional principles, whereas Fontenot relied on dicta that was inconsistent with a statute that gave him constitutionally sufficient notice of the fact that he could be convicted of attempt.

Fontenot had another reason to know he could potentially be convicted of attempted kidnapping despite being charged only with completed kidnapping. When he was tried, we had not yet overruled *Martinez*. Indeed, in *Bailey*, we cited *Martinez* but took special care not to directly overrule it. (See *Bailey*, *supra*, 54 Cal.4th at p. 753.) We cautioned that the law of attempt is complicated, leaving room for the possibility that we might one day reaffirm *Martinez*'s conclusion that attempted kidnapping was a lesser included offense of completed kidnapping. (See *ibid.*) Although we decline to take that course today, that possibility was very much alive at the time of Fontenot's trial. So despite overbroad dicta in our prior cases, and despite the Court of Appeal's decisions in *Braslaw* and

*Hamernik*, Fontenot had ample reason to be ready to defend against allegations of attempted kidnapping.[10]

### III.

An attempt to commit kidnapping under section 207, subdivision (a) has an element that the completed crime does not. To be guilty of completed kidnapping under subdivision (a) of section 207, someone need only engage intentionally in the action that constitutes the crime — provided there exists a union between that act and some minimally wrongful intent, and leaving aside the application of subdivision (e) in cases involving young victims. Yet attempted kidnapping in this context requires a more demanding mental state: a conscious design or purpose to take and carry away the victim a substantial distance, by force or fear, and without consent. That additional intent element serves to distinguish a step towards a completed crime from other behavior, and it means courts

---

[10] The dissent contends that our reasoning expects Fontenot to have somehow anticipated that we would reject *Bailey*'s dicta regarding section 1159, but *not* to have anticipated that we would overrule *Martinez, supra*, 20 Cal.4th 225. (Conc. & dis. opn. of Liu, J., *post*, p. 9.) Yet our analysis does not depend on whether Fontenot might reasonably have questioned our holding in *Martinez*. The issue instead is whether Fontenot was on notice at the time of trial that he could potentially be convicted of an uncharged attempted kidnapping. In light of the fact that immediately following *Bailey*'s dicta, we cited *Martinez* as a case that "stated or applied the general principle that attempt is a lesser included offense of any completed crime" (*Bailey, supra*, 54 Cal.4th at p. 753), and we expressly noted that the offense in Martinez was *kidnapping*, the most reasonable conclusion at that time was that he could potentially be convicted of attempted kidnapping. The dissent, in contrast, would expect a defendant in these circumstances to rely on dicta and ignore a holding.

cannot assume attempted kidnapping is a lesser included offense of completed kidnapping.

Despite this conclusion, we do not find reversal is warranted by the mere fact that Fontenot was charged with completed kidnapping but convicted of attempted kidnapping. That's because section 1159 means what it says: a defendant may be convicted of an attempt despite being charged only with the completed crime. And section 1159, so read, comports with a defendant's Sixth Amendment right to be informed of the nature and cause of the accusation against him, as well as with federal due process principles.

Nor does the substance of California's case law at the time of Fontenot's trial persuade us to disturb the Court of Appeal's judgment. Contrary to what Fontenot contends, our previous decisions and those of the Courts of Appeal gave him sufficient reason to know he could potentially be convicted of attempted kidnapping despite being charged only with the completed offense.

The foregoing conclusions resolve the challenges to Fontenot's conviction that he has meaningfully advanced in our court. So we affirm the Court of Appeal's judgment.

**CUÉLLAR, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**

**CHIN, J.**

**CORRIGAN, J.**

PEOPLE v. FONTENOT

S247044


Concurring Opinion by Justice Kruger


Defendant John Reynold Fontenot was dragging a four-year-old girl through a building lobby when he was stopped by the combined efforts of the girl's babysitter and her playmates. Defendant was charged with kidnapping. After a bench trial, the trial court found that defendant had not managed to complete the kidnapping before he was stopped, but that he had attempted to kidnap her. Defendant challenges the resulting conviction on the ground that he lacked adequate notice that he could be held liable for attempted kidnapping. He contends that attempted kidnapping is not a lesser included offense of kidnapping and therefore was not fairly included in the charges against him. He asks us to overrule our precedent holding otherwise. (*People v. Martinez* (1999) 20 Cal.4th 225, 241 (*Martinez*).)

I agree with the majority that the plain language of Penal Code section 1159 provided defendant with constitutionally sufficient notice that he could be convicted of an attempt to commit the charged offense, regardless of whether the attempt is considered to be a lesser included offense. (Maj. opn., *ante*, at pp. 4–9.) That is a complete answer to defendant's challenge, and I concur in the majority's judgment upholding defendant's conviction on that basis.

The majority, however, does not stop there. It goes on to address the underlying premise of defendant's argument—that

we were wrong in *Martinez* to call attempted kidnapping a lesser included offense of kidnapping—and to agree with it. (Maj. opn., *ante*, part II.B.1.) I do not join this portion of the majority's opinion for two reasons.

First, there is no real reason for us to decide the issue here, overruling precedent in the process. Whether or not attempted kidnapping is considered a lesser included offense, as we have previously said it is, Penal Code section 1159 informed defendant that he could be convicted of attempt. The majority says we still have to assure ourselves that the trial court found all the necessary elements to support the conviction. (Maj. opn., *ante*, at pp. 9–10.) But no one doubts that the trial court made the necessary findings; that is not defendant's problem with the court's judgment.

But second—for reasons I'll explain in greater detail below—I am not persuaded the majority's answer to the lesser included offense question is correct. Defendant relies on a formal distinction between the "general" criminal intent required for forcible kidnapping under Penal Code section 207, subdivision (a), and the "specific" intent to kidnap required for attempted kidnapping. But the question whether there is a substantive difference between these two mental states, beyond the difference in labels, is more complex than either defendant or the majority acknowledges. And more to the point, precedent establishes that where, as here, the victim is a young child, the crime of kidnapping requires the taking and asportation of the victim be done for an illegal purpose or with an illegal intent. (*In re Michele D.* (2002) 29 Cal.4th 600, 610–612; *People v. Oliver* (1961) 55 Cal.2d 761, 767–768 (*Oliver*).) That is a kind of specific intent requirement, and it is substantively indistinguishable from the specific intent requirement for

attempted kidnapping. Thus, at least where the victim is a young child, it would seem that attempted kidnapping is, in fact, a lesser included offense of kidnapping. We should leave other questions about other forms of the offense for cases in which those questions are squarely presented.

## I.

The lesser included offense issue is one that has generated considerable confusion among both lower courts and the parties to this case. Again, there is no reason for us to decide the issue here. But if we are going to address it anyway, some clarification would be helpful.

Much of the confusion stems from the parties' reading of our decision in *People v. Bailey* (2012) 54 Cal.4th 740 (*Bailey*). In that case, we considered whether, after finding that the defendant inmate's escape from his cell was insufficient to support a conviction for escape from state prison, the appellate court could reduce the defendant's conviction to attempted escape on the ground that the latter is a lesser included offense of the former. We answered no, explaining that the latter is not a lesser included offense of the former: Escape has been described as requiring only general criminal intent while, under Penal Code section 21a, an attempt involves the specific intent to commit the crime. We concluded that "[u]nder the elements test, attempt to escape is not a lesser included offense of escape since it requires additional proof that the prisoner actually intended to escape." (*Bailey*, at p. 749.) The parties here largely follow this lead; relying on *Bailey*, defendant argues, and the Attorney General concedes, that attempted kidnapping is not a lesser included offense of kidnapping because it requires proof that the defendant intended to kidnap.

This reliance is misplaced, in my view. Unlike this case, *Bailey* was not a case about whether the defendant had adequate notice of the charges; the question was whether it was permissible on appeal to reduce an invalidated conviction for a completed crime to a conviction for attempt. On that question, *Bailey* unquestionably reached the right result: Based on the elements found by the jury, the defendant's invalidated escape conviction could not be reduced to attempted escape on the ground that the latter was a lesser included offense of the former. This is because the jury that rendered the escape conviction had never found that the defendant had the intent that would have been necessary to support a conviction for attempted escape (or a valid conviction for completed escape, for that matter).[1]

But it is not the case, as the parties here have understood *Bailey* to say, that attempt is *never* a lesser included offense of a general intent crime because it always requires an additional

---

[1] The *Bailey* jury had been given a misleading instruction implying that a completed escape could be found so long as the defendant merely passed " 'beyond some barrier, such as a fence or wall, intended to keep the prisoner within a designated area.' " (*Bailey, supra*, 54 Cal.4th at p. 746; see *id.* at pp. 755–757 (conc. opn. of Werdegar, J.).) In light of that instruction, the jury's guilty verdict on escape did not necessarily rest on a finding that the defendant intentionally escaped from the limits of his confinement, the proper measure of a completed escape. (*Id.* at pp. 748–749.) And absent such a finding, the Court of Appeal could not properly reduce the defendant's conviction to attempted escape, as that offense, too, requires the intent to escape from the limits of one's confinement. (See *id.* at p. 754 [reduction improper because under the instructions given, jury might have convicted of escape even if it believed the defendant that he "merely intended to assault another prisoner and did not intend to escape"].)

element of proof—namely, proof of "specific" intent to commit the crime. On the contrary, we have long said that attempt to commit a crime is, in fact, a lesser included offense of the completed crime. (See, e.g., *People v. Vanderbilt* (1926) 199 Cal. 461, 463 (*Vanderbilt*) [" 'It is not disputed, nor could it well be disputed, that, as an abstract proposition, every completed crime necessarily involves an attempt to commit it.' "].) Although *Bailey* rightly noted that this general principle does not always apply, our opinion did not purport to repudiate the principle altogether. (*Bailey*, *supra*, 54 Cal.4th at p. 753.)

In many cases, the general principle only makes sense. Many criminal statutes define the actus reus, or prohibited conduct, in terms of committing a particular unlawful act (for example, striking another person)—as opposed to, for example, producing a particular harmful result (for example, causing serious injuries to another person). For such act-based offenses, the "general" criminal intent to do the specified act, as required for the completed offense, will generally be indistinguishable from the "specific" intent to do the specified act, as required for an attempt. In other words, when an offense requires commission of act X, the general criminal intent needed is simply the intent to do X. To convict of the attempted crime, the jury would also need to find the defendant intended to do X. We call this "specific" intent because it refers to an act the defendant has not yet performed. (See *People v. Hood* (1969) 1 Cal.3d 444, 456–457.) This requirement of intent to perform some future unlawful act is, as the majority says, generally what distinguishes the crime of attempt from purely innocent conduct. (Maj. opn., *ante*, at p. 14.) But it is not different in substance from the intent the prosecution would be required to

prove if it were going to establish liability for the completed crime.  (See *ibid.*)[2]

To give a concrete example, consider Penal Code section 288.7, subdivision (a), which punishes sexual intercourse or sodomy by a person at least 18 years old with a child 10 years old or younger.  The general criminal intent required for the completed crime is the intent to engage in sexual intercourse or sodomy with the child victim.  If an attempt conviction were sought instead, the People would need to prove that the defendant took a direct action toward sexual intercourse or sodomy with the intent of committing one of those sexual acts.  We call this mental state a specific intent, because it relates to an action beyond the attempt itself.  But if it is proved that the defendant intentionally committed one of these unlawful acts, it will also necessarily have been proved that the defendant

---

[2]     Thus when a crime is defined in terms of committing a particular unlawful act, it is perfectly accurate to say (as we have long said) that the defendant could not have committed the crime without also having attempted to do so. (See *Vanderbilt, supra,* 199 Cal. at pp. 463–464.)  A person who intentionally committed a prohibited act must *also* have "specifically" intended to commit the act before it was completed.

I do not mean to say that attempts are invariably included in the completed crime, or that the mental state elements for attempts and completed crimes are always identical. Where, for example, the offense is not solely conduct-based, having as an element the creation of a particular result but not the intent to cause that result, the intent for attempt will differ significantly. Murder, for instance, requires an act causing the death of another, but not the intent to kill, as implied malice will suffice. Attempted murder, which *does* require intent to kill, is therefore not a lesser included offense of murder. (*People v. Bland* (2002) 28 Cal.4th 313, 327–328; *People v. Mize* (1889) 80 Cal. 41, 42–43.)

intended to commit one of these unlawful acts. In the attempt context, we might label this "specific" intent, but the label does not change the substance of the requirement.

This observation about the relationship between general and specific intent is by no means a new one. Chief Justice Traynor made the same point 50 years ago in a slightly different context. After setting out his now-canonical description of general criminal intent as the intent to perform a particular criminal act (*People v. Hood*, *supra*, 1 Cal.3d at p. 456) and specific intent as the "intent to do some further act or achieve some additional consequence" (*id.* at p. 457), he noted: "There is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do that same act in the future." (*Ibid.*; accord, *People v. Hering* (1999) 20 Cal.4th 440, 445.) From the sometimes "chimerical" nature of the specific or general intent distinction in the context of the crime of assault, the *Hood* court took the lesson that the question of whether evidence of intoxication may be used to defend against an assault charge "must rest on other considerations." (*Hood*, at p. 458.) A similar note of caution is in order here. Whether attempt is a lesser included offense of the completed crime does not turn on a mere difference in labels, but on the "reality" of the distinction in the context of a particular crime. (*Ibid.*) The question we must ask is whether, in substance, the attempt offense requires proof of some element the completed crime does not.

## II.

With this background in mind, we can return to the matter at hand: Was attempted kidnapping a lesser included offense of the crime charged in this case? Defendant says no, and the

Attorney General concedes the point. Completed kidnapping under Penal Code section 207, subdivision (a), requires proof the defendant took the victim and carried him or her away a substantial distance by force or fear and without the victim's consent. Defendant reasons that a conviction for completed kidnapping requires only general criminal intent as to the criminal act itself, meaning intent to move the victim a substantial distance. (*People v. Mayberry* (1975) 15 Cal.3d 143, 153; *People v. Dalerio* (2006) 144 Cal.App.4th 775, 781.) By contrast, attempted kidnapping requires proof of a *specific* intent to move the victim a substantial distance. But labels aside, defendant does not explain how this intent requirement differs substantively from the general intent required for the completed offense.

The majority does suggest one possible answer, but it is not clear the answer is correct. The majority points out that for forcible kidnapping, much as for forcible rape, California law provides a defense of reasonable and bona fide belief that the victim consented to the asportation. The law thus effectively requires that the defendant have been at least negligent as to the victim's consent. (Maj. opn., *ante*, at p. 16; *Mayberry*, at pp. 154–155.) In contrast, the majority reasons, attempted kidnapping under Penal Code section 21a must impose a heightened mens rea element that "requires the defendant to *purposefully* inflict whatever degree of force or fear is required to overcome the victim's will." (Maj. opn., *ante*, at p. 17, italics added.) Elsewhere, the majority describes this requirement as a "conscious design or purpose" to "tak[e] and carr[y] away the victim a substantial distance, by force or fear, and without consent." (*Id.* at pp. 16–17.) Though the majority does not say it precisely this way, this "conscious design" requirement would

8

seem to mean that for attempted kidnapping the People must prove both that the defendant intended to carry the victim away *and* that the defendant actually knew the victim did not consent to the asportation. An unreasonable failure to appreciate the victim's unwillingness would not be enough.

For reasons I'll explain further below, this explanation does not have much to do with this case. The victim was a four-year-old legally incapable of consent; whether the child consented to being carried away, or whether defendant believed she consented, was not at issue. But even setting the point aside for now, it seems to me we should pause before embracing this suggested view of the specific intent requirement for attempted kidnapping and other crimes to which the victim's consent is relevant.

Whether the majority's suggested view is correct depends on what we mean when we say that an attempt involves an "intent to commit the crime." (Pen. Code, § 21a.) If that means the defendant's purpose must encompass each of the circumstances that make an act criminal, including the existence of victim's lack of consent, then an attempt will often require a higher mens rea as to those circumstances than the completed crime. But alternatively, if "intent to commit the crime" simply means intent to commit an act that would be criminal if completed, then it is not clear why a defendant who intended to move a person the defendant *should have* known to be unconsenting, and took a concrete step to put the plan into action, should not be held liable for attempted kidnapping.

If we are choosing between these two interpretations, there are some good reasons to prefer the second one. For one, it fits with common understandings of the law of attempt. If a person

tries to take an unconsenting victim, unreasonably failing to see the victim's unwillingness to go, and is stopped before he can travel too far, undoubtedly many of us would say that person attempted to kidnap the victim.  The law of attempt, as we have explained, is designed to protect society from the harm threatened by individuals who set out on a course of criminal conduct but " 'for some collateral reason [are unable to] complete the intended crime.' " (*People v. Toledo* (2001) 26 Cal.4th 221, 230.)  A person who tries and fails to carry away an unconsenting victim threatens significant harm, even if he has been merely negligent or reckless in ascertaining the victim's consent.

The second interpretation also fits with the ways we have previously described the intent requirement for attempt.  We have said a defendant may be convicted of criminal attempt when he or she acts "with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime [citation], and performs an act that . . . 'show[s] that the perpetrator is putting his or her plan into action.' " (*People v. Toledo*, *supra*, 26 Cal.4th at p. 230; see 2 LaFave, Substantive Criminal Law (2018) Solicitation and Attempt, § 11.3, p. 293 (LaFave) [describing mental state for attempt as "an intent to do an act or to bring about a certain consequence which would in law amount to a crime"].)  We have not further required that the defendant act with a purpose of performing the prescribed acts under the particular circumstances that render them illegal.

The Model Penal Code makes this point more explicitly:  For an attempt, the Model Penal Code requires that the person act purposefully as to the criminal conduct itself, with purpose or belief as to a particular result that is an element of the

completed crime, but in other respects only "with the kind of culpability otherwise required for commission of the crime." (Model Pen. Code, § 5.01, subd. (1).) An explanatory note reiterates that while purposive action is required as to the criminal conduct itself, "with respect to the circumstances under which a crime must be committed, the culpability otherwise required for commission of the crime is also applicable to the attempt . . . ." (*Id.*, explanatory note to § 5.01, p. 297.)[3]

And finally, this interpretation generally fits with the way California courts have approached attempts to commit forcible sex offenses, to which the victim's consent is also relevant. In such cases, courts have not required that the defendant act with the conscious purpose of overcoming the victim's will. They have instead required only that the defendant show a willingness to use whatever force is necessary to accomplish the intended sexual act. Early California cases held that assault with intent to commit rape requires the defendant have the intent "to use whatever force was necessary upon the prosecutrix to accomplish the consummation of his desires." (*People v. Fleming* (1892) 94 Cal. 308, 312; accord, *People v. Stewart* (1893) 97 Cal. 238, 240.) We reaffirmed this formulation more recently,

---

[3]  The commentary to this section of the Model Penal Code gives some illustrations of its application. For example, where a statute prohibits sexual intercourse with a female under a certain age, the required culpability as to the victim's age would be no greater for attempt than for the completed offense. (Model Pen. Code & Commentaries, com. 2 to § 5.01, pp. 301–303.) Attempt requires the person act with the purpose of committing the criminal conduct defining the completed offense, "but his purpose need not encompass all of the circumstances included in the formal definition of the substantive offense." (*Id.* at p. 301.)

equating " 'the intent to commit the act against the will of the complainant' " with the intent " 'to use whatever force may be required.' " (*People v. Davis* (1995) 10 Cal.4th 463, 509, quoting *People v. Meichtry* (1951) 37 Cal.2d 385, 388–389.) This formulation does not require the prosecution to prove a "conscious design or purpose" (maj. opn., *ante*, at pp. 16–17) to overcome the will of a victim the defendant knows to be unconsenting; it requires indifference with regard to the victim's consent. This understanding may help to explain why we have previously described attempted rape as a lesser included offense of rape. (*People v. Atkins* (2001) 25 Cal.4th 76, 88, citing *People v. Osband* (1996) 13 Cal.4th 622, 685 and *People v. Kelly* (1992) 1 Cal.4th 495, 526, 528.) It is not clear why we would treat attempted kidnapping differently.

To be clear, this approach is not the same thing as saying that a person can negligently or recklessly attempt to commit a crime. As the majority says, an attempt necessarily requires that the perpetrator intend to commit the conduct constituting the completed crime, and have purpose or at least knowledge as to any required consequence. It is in this sense that "an attempt 'cannot be committed by recklessness or negligence'—'even if the underlying crime can be so committed.' (LaFave, *supra*, § 11.3, p. 293.)" (Maj. opn., *ante*, at p. 17.) But it does not follow that the prosecution must prove the defendant's conscious purpose with respect to every element of the offense, including the existence of victim consent or other circumstances of the crime. Indeed, Professor LaFave himself also acknowledges that there is nothing obviously unsound about an approach that treats the mental state respecting such circumstances as the same for both

attempt and for the completed crime, even when the mental state in question is one of recklessness or negligence.[4]

I express no firm views on these issues here; I raise these points only to explain why the matter is more complex than the majority opinion suggests. If we are to answer the lesser included offense question by focusing on the role of victim consent—overturning our own precedent in the process (maj. opn., *ante*, p. 19)—these are important issues we ought to grapple with.

But ultimately there is no reason for us to resolve these issues in this case, because, as I have already noted, the victim's consent was not relevant in this prosecution. Defendant was not charged with kidnapping of an unconsenting victim; he was charged with kidnapping a four-year-old child who, because of

---

[4] Professor LaFave finds a lack of authority on this issue but notes "a persuasive argument" that if the completed crime requires only " 'recklessness, or negligence, or even blameless inadvertence' " as to an attendant circumstance such as victim consent, that mental state " 'will suffice also for the attempt.' " (LaFave, *supra*, § 11.3(c), p. 302, quoting Smith, Two Problems in Criminal Attempts (1957) 70 Harv. L.Rev. 422, 434; see LaFave, *supra*, § 11.3(b), p. 298, fn. 32, citing *Sergie v. State* (Alaska Ct.App. 2005) 105 P.3d 1150, 1154 [to be guilty of an attempted sexual assault offense, the defendant must exhibit reckless disregard for the victim's lack of consent to the sexual contact]; *id.* at p. 1155 [the government need not prove the defendant "intended the circumstance that the penetration be without . . . consent"]; see also, e.g., *State v. Mayfield* (Alaska Ct.App., May 3, 2019, No. A-12534) 2019 WL 1970114, p. *7 [clarifying that an attempted sexual assault requires only that the defendant recklessly disregarded a risk the victim did not consent to sexual contact and intended to achieve that contact by force or threat if necessary].)

her youth, was legally incapable of giving or withholding consent. Her lack of consent, and defendant's mental state with regard to it, were not legally material to the charge. Instead, the kidnapping charge required proof that defendant took the child for an illegal purpose—itself a kind of specific intent requirement.

We interpreted the kidnapping statute this way in *Oliver*, *supra*, 55 Cal.2d 761, a case in which the defendant had been charged with kidnapping a two-year-old child. He complained that under the standard instruction on the intent for kidnapping, which stated that no proof of a specific intent or purpose was needed, an adult forcibly moving a child without any wrongful purpose—for example, to rescue the child from danger or simply to walk with the child down the street—could be convicted of kidnapping. (*Id.* at pp. 764–765.) The court agreed, and noted the same could be true of an adult victim mentally incapacitated by illness or intoxication. Considering this result inconsistent with legislative purpose, we formulated this general rule: "Penal Code, section 207, as applied to a person forcibly taking and carrying away another, who by reason of immaturity or mental condition is unable to give his legal consent thereto, should . . . be construed as making the one so acting guilty of kidnaping only if the taking and carrying away is done for an illegal purpose or with an illegal intent." (*Oliver*, at p. 768.) We have since repeatedly reaffirmed this holding. (*People v. Hill* (2000) 23 Cal.4th 853, 856–857; *In re Michele D.*, *supra*, 29 Cal.4th at pp. 610–612 (*Michele D.*); *People v. Westerfield* (2019) 6 Cal.5th 632, 714.)

In *Michele D.*, we considered a second, corollary question: If the victim is too young to withhold consent to movement and therefore offers no resistance to the asportation, how is the

element of force or fear to be established? (*Michele D.*, *supra*, 29 Cal.4th at p. 606.) Although *Oliver* had expressly addressed only consent, we held the logic of that decision required that the standard of force or fear (which typically functions as the inverse of consent) should also be modified for kidnapping of a small child: "We formulate that standard as follows: the amount of force required to kidnap an unresisting infant or child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (*Michele D.*, at p. 610.) The Legislature later codified this force standard in Penal Code section 207, subdivision (e). Although the holdings of *Oliver* and *Michele D.* are related, they are distinct, as the *Michele D.* opinion itself makes clear: the opinion first articulates the standard of force applicable to kidnap of an unresisting child (*Michele D.*, at p. 610) and then, separately, reaffirms *Oliver*'s illegal purpose holding (*Michele D.*, at p. 612).

*Oliver*'s requirement that the asportation be made with an illegal purpose or intent makes kidnapping of a small child a specific intent crime, not a crime of general intent. It would seem to follow that there was no substantive difference between the intent element of the kidnapping charged and the specific intent element of the attempt offense.

The majority acknowledges the point, but sets it aside; it asserts this theory of kidnapping is not before us because the People have not relied on Penal Code section 207, subdivision (e), but only on subdivision (a) of that statute, which defines the offense of forcible kidnapping. (Maj. opn., *ante*, at pp. 20–21.) It is true that at defendant's bench trial, the parties' arguments paid little or no attention to the "illegal purpose" element— indeed, they barely addressed any element other than

asportation; both attorneys noted that the only serious dispute was over whether the victim had been moved a substantial distance. But both court and counsel had before them and referred to a standard instruction on kidnapping, CALJIC No. 9.50, whose use note plainly states the *Oliver* rule.[5] And although the information charged only a violation of Penal Code section 207, subdivision (a), without citing subdivision (e) of that statute, the element of illegal purpose required under *Oliver* was not thereby eliminated. Subdivision (e) does not set out a variant form of kidnapping; like the *Michele D.* decision from which it was drawn, it merely provides a gloss on how force may be established "[f]or purposes of those types of kidnapping requiring force." (Pen. Code, § 207, subd. (e).) There was no need to include it in the information's allegations. (*People v. Westerfield, supra*, 6 Cal.5th at p. 715 ["*Oliver* and *Michele D.* . . . did not create a new or different crime of kidnapping that needed to be expressly pleaded against the defendant."].)

The majority expresses concern that the parties have not briefed the special intent requirement that applies in child kidnapping cases. This is true, and unfortunate—as is the fact they have not briefed the substantive differences between the

---

[5] The use note to CALJIC No. 9.50 (2012 rev.) states: "If the victim of the alleged kidnapping is incapable of giving consent, the People must prove the movement was done for an illegal purpose or with an illegal intent. See CALJIC 9.57. (*People v. Oliver*, 55 Cal.2d 761, 768, 12 Cal.Rptr. 865, 869, 361 P.2d 593, 597 (1961).) (*People v. Ojeda-Parra*, 7 Cal.App.4th 46, 50, 8 Cal.Rptr.2d 634, 636 (2d Dist. 1992).)" CALJIC No. 9.57, referenced in the use note, states the force standard of *Michele D.* and Penal Code section 207, subdivision (e). The *Oliver* rule has also been captured in a Judicial Council instruction, CALCRIM No. 1201 (2008 rev.).

mental state required for attempted kidnapping and for the offense with which defendant was charged. But if we are going to venture beyond the bounds of the parties' briefing, as the majority already does, I see no reason why we shouldn't also acknowledge the direct relevance of the *Oliver* line of cases— particularly before undertaking to overrule *Martinez*. *Martinez*, after all, was also a case involving the taking of a child; it held that the kidnapping charge there at issue encompassed "the lesser included offense of attempted kidnapping of a person under the age of 14 (§§ 664/207, 208) . . . ." (*Martinez, supra,* 20 Cal.4th at p. 241.) Because *Oliver* establishes that kidnapping is a specific intent crime when the victim is a small child, it seems to me *Martinez*'s description of the relationship between attempted kidnapping and the completed crime likely remains correct, at least as to a child the age of the victim here.

In short, whatever might be said about the offense in general, kidnapping is a specific intent crime when the victim is a young child, requiring proof defendant took and moved the victim for an illegal purpose or with an illegal intent. It appears there is no difference between this mental state requirement and the required mental state for attempted kidnapping. Defendant's challenge to his attempted kidnapping conviction falters out of the gate.

### III.

Ultimately, however, I return to where I began. The lesser included question is largely academic here. Whatever fine distinctions might or might not exist between the mental state requirements for attempted kidnapping and the crime charged in this case, the Legislature has put all defendants charged with crime on notice that they may be convicted of attempt if the

evidence supports it.  As the majority opinion holds, Penal Code section 1159 affords defendants constitutionally adequate notice that they may be convicted of an attempt to commit the charged crime.  (Maj. opn., *ante*, at pp. 4–9.)  On this basis, I concur in the judgment of the court.


**KRUGER, J.**

PEOPLE v. FONTENOT

S247044


Concurring and Dissenting Opinion by Justice Liu


Today's opinion correctly holds that attempted kidnapping is not a lesser included offense of completed kidnapping and that Penal Code section 1159 (section 1159) authorizes conviction for an uncharged attempt to commit a charged offense, even if the attempt is not necessarily included in the charged offense. I do not agree, however, that the defendant in this case had sufficient notice to permit conviction for attempted kidnapping on a charge of completed kidnapping. Notwithstanding the plain language of section 1159, our precedent at the time of defendant John Fontenot's 2016 trial did not make clear that a conviction for an uncharged attempt was possible if the attempt offense included an element that the charged offense lacked. Not only did our case law contain no clear holding to that effect, but we had made consistent statements to the contrary in several cases over the past six decades and, in so doing, *repeatedly cited section 1159.*

It is one thing to say, as the court does today, that our past statements were mistaken. But it is quite another to say that the burden of our mistakes should fall on Fontenot because he should have known not to give credence to statements that we had affirmed, reaffirmed, and re-reaffirmed over the years. This seems quite unfair. I would reverse Fontenot's conviction for attempted kidnapping on the ground that he was not adequately "informed of the nature and cause of the accusation." (U.S.

Const., 6th Amend.; see *People v. Thomas* (1987) 43 Cal.3d 818, 823.)

"[R]etroactive application of a decision disapproving prior authority on which a person may reasonably rely" in preparing a defense or in determining whether conduct is criminal violates due process of law. (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 429–430 (*Moss*).) In *Moss*, we evaluated whether "a parent whose inability to pay court-ordered child support results from a willful failure to seek and obtain employment [may] be adjudged in contempt of court and punished for violation of the order." (*Id.* at p. 400.) We held that such a parent could be subject to contempt sanctions, but we declined to apply this rule to the litigant before us, Brent Moss. (*Id.* at p. 401.) A prior case, *Ex parte Todd* (1897) 119 Cal. 57, had held that a court may not impose contempt sanctions for nonpayment of spousal support in such circumstances. Although *Moss* involved child support, not spousal support, we observed that "no basis for distinguishing child support orders was apparent at the time *Todd* was decided . . . ." (*Moss*, at p. 429.) We acknowledged that "the Legislature has authorized a court to require nonsupporting parents to demonstrate that efforts have been made to find employment" (*ibid.*) and that "the Legislature intend[ed] that . . . parental ability to work in order to support a child be considered in any enforcement action" (*id.* at p. 423). Nevertheless, we were "unwilling to assume" that "Brent should have known in advance of our decision today . . . that *Todd* was inapplicable . . . ." (*Id.* at p. 429.) Thus, even though *Todd* involved spousal support and not child support, and even though the Legislature had enacted child support statutes bearing on the issue presented, we concluded that "Brent could reasonably have relied on *Todd*" for a contrary rule applicable to child

support and that our decision in *Moss* "may reasonably be seen . . . as an unanticipated expansion of the law of contempt in the child support context." (*Moss, supra,* 17 Cal.4th at p. 429.)

We applied similar reasoning in holding that Brent could not be subject to a second rule we newly established in *Moss,* i.e., that an alleged contemnor has the burden of proof as to inability to pay. (*Moss, supra,* 17 Cal.4th at p. 430.) Because this new rule partially disapproved *In re Feiock* (1989) 215 Cal.App.3d 141, retroactive application to Brent violated due process. (*Moss,* at p. 430.) As we explained, "to state a new rule on appeal after trial . . . and to apply the new rule retroactively to a trial at which the defendant did not have notice of the change is not permissible." (*Ibid.*)

Similarly here, Fontenot "could reasonably have relied" on our prior statements limiting convictions for uncharged crimes to those necessarily included in charged crimes, and today's opinion "may reasonably be seen" as "an unanticipated change in the law." (*Moss, supra,* 17 Cal. 4th at pp. 429, 401.)

Considered in isolation, the plain language of section 1159 would have provided Fontenot with sufficient notice of a possible conviction for attempted kidnapping when he was charged with completed kidnapping. But the text of section 1159 did not exist in a vacuum at the time of Fontenot's trial. Notwithstanding the statute's text, this court had repeatedly stated, *with citations to section 1159,* that a defendant could be convicted of an uncharged crime only if that crime is a lesser included offense of a charged crime.

In *In re Hess* (1955) 45 Cal.2d 171 (*Hess*), we said: "A person cannot be convicted of an offense (other than a necessarily included offense) not charged against him by

indictment or information, whether or not there was evidence at his trial to show that he had committed that offense." (*Id.* at pp. 174–175.) In support of this conclusion, we cited to a string of cases and statutes, including section 1159. (*Hess*, at p. 175.)

In *People v. West* (1970) 3 Cal.3d 595 (*West*), we cited *Hess* in stating that "[w]hen a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime." (*West* at p. 612, citing *Hess*, *supra*, 45 Cal.2d at pp. 174–175.) We quoted *Hess*'s concern that " '[d]ue process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' " (*West*, at p. 612, quoting *Hess*, at p. 175.)

In *People v. Lohbauer* (1981) 29 Cal.3d 364 (*Lohbauer*), we said that a defendant cannot "be convicted of an offense which is neither specifically charged in the accusatory pleading nor 'necessarily included' within a charged offense." (*Id.* at p. 367.) Echoing *Hess* and *West*, and citing section 1159, we explained that "the requisite notice is nonetheless afforded if the lesser offense is 'necessarily included' within the statutory definition of the charged offense; in such event conviction of the included offense is expressly authorized (§ 1159)." (*Lohbauer*, at p. 367.)

In *People v. Reed* (2006) 38 Cal.4th 1224 (*Reed*), we again said: "A defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime. (§ 1159; *Lohbauer*, *supra*, 29 Cal.3d at pp. 368–369.) The reason for this rule is settled. ' " This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused be advised of the charges against him in order that

he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" ' (*Lohbauer, supra,* at p. 368.) The required notice is provided as to any charged offense and any lesser offense that is necessarily committed when the charged offense is committed." (*Id.* at p. 1227.)

This language in *Reed* could not be clearer. We did not say that a defendant may be convicted of an uncharged crime if, but only if, the uncharged crime either is necessarily included in the charged crime *or is an attempt to complete the charged crime.* Instead, we said that due process requires notice of charges and that such notice is given only for the charged offense and lesser-included offenses. In stating this rule, we cited section 1159. One year later, in *People v. Sloan* (2007) 42 Cal.4th 110, we recited with approval the language from *Reed* quoted above. (*Sloan*, at p. 116, quoting *Reed*, *supra*, 42 Cal.4th at p. 1127.)

Most recently, in *People v. Bailey* (2012) 54 Cal.4th 740 (*Bailey*), we expressly recognized that a literal construction of section 1159 was inconsistent with our prior cases. The Attorney General argued in *Bailey* that section 1159's language authorizing conviction of any uncharged offense necessarily included in the charged offense " '*or of an attempt to commit the offense*' " (Bailey, *at p. 752, quoting § 1159, italics added by Bailey*) *meant that* " '*a conviction of attempt to commit the substantive crime is deemed a lesser included offense of the charged substantive offense, by operation of section 1159 itself* ' " (*Bailey*, at p. 752). In rejecting this argument, we said: "The disjunctive language [of section 1159] appears to support the claim a trial court may reduce a defendant's conviction to an uncharged attempt if supported by the evidence. However, we made the qualification that under section 1159, '[a] defendant

5

may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime.' (*Sloan, supra,* 42 Cal.4th at p. 116; see *Reed, supra,* 38 Cal.4th at p. 1227; *Lohbauer, supra,* 29 Cal.3d at pp. 368–369." (*Ibid.*)

Today's opinion says "[t]he only time we have confronted circumstances at all like those here was in *Oates,* and there we *upheld* the defendant's conviction for an attempt." (Maj. opn., *ante,* at p. 23, citing *People v. Oates* (1904) 142 Cal. 12, 14.) But it is readily apparent that *Oates,* a brief and somewhat cryptic opinion, could not have provided Fontenot with sufficient notice that he could be convicted of an uncharged attempt that was not necessarily included in the charged crime. In *Oates,* we rejected the argument that section 1159 had been enacted in violation of a state constitutional provision prescribing the format of certain statutes. (*Oates,* at pp. 13–14.) The meaning of section 1159 was not at issue, and we said nothing about it. The court today says *People v. Vanderbilt* (1926) 199 Cal. 461, 464, cited *Oates* "for the 'well-established principle' that pursuant to section 1159, a person may be convicted of an attempt to commit a charged crime even if not [so] charged." (Maj. opn., *ante,* at p. 24, fn. 9.) But this overreads *Vanderbilt,* which cited *Oates* in saying that a charged offense of sodomy may result in a conviction for attempted sodomy and then, in the very next sentence, explained that "an attempt to commit [sodomy] — a lesser crime — is necessarily included within the greater and completed offense." (*Vanderbilt,* at p. 464.) In any event, *Oates* and *Vanderbilt* long predated the line of cases discussed above, which repeatedly "made the qualification that under section 1159, ' [a] defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime. ' " (*Bailey, supra,* 54 Cal.4th at p. 752.)

The court says our past statements "do not dictate our decision in this case about the meaning and constitutionality of section 1159" because none of our prior decisions "confronted a situation like this one." (Maj. opn., *ante*, at p. 23.) But the above-quoted passage in *Bailey* construing section 1159 was not dicta; it was reasoning essential to the decision. (See *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1158 [" 'Dicta consists of observations and statements unnecessary to the appellate court's resolution of the case.' "].)

In any event, it is a non sequitur to say that "[j]ust as our dicta in *Bailey* and other decisions do not control our decision today, Fontenot could not reasonably rely on those statements in preparing for trial in the face of section 1159's unambiguous and clearly relevant language, and the nearly ubiquitous charging practice it establishes." (Maj. opn., *ante*, at p. 25.) Even if our past statements "do not *control* our decision today," it does not follow that "Fontenot could not *reasonably rely* on those statements." Indeed, it was "in the face of section 1159's unambiguous and clearly relevant language" (*ibid.*) that our own decisions nevertheless stated, again and again, that a defendant may be convicted of an uncharged crime only if it is necessarily included in the charged crime.

In fact, *People v. Braslaw* (2015) 233 Cal.App.4th 1239 and *People v. Hamernik* (2016) 1 Cal.App.5th 412 adopted exactly the position that Fontenot urges here. Those cases held that a defendant may not be convicted of an uncharged attempt unless it is necessarily included in the charged crime, and *Braslaw*, which predated Fontenot's trial, squarely relied on the " 'qualification' " of section 1159 stated in *Bailey*. (*Braslaw*, at p. 1247, quoting *Bailey*, *supra*, 54 Cal.4th at p. 752; see *Hamernik*, at pp. 426–427.) *Braslaw* and *Hamernik* confirm the

7

reasonableness of Fontenot's understanding of the law at the time of his trial.

There is nothing wrong with acknowledging error in our past statements. But when we do so, we should not fault litigants like Fontenot for believing what we write in the Official California Reports. It was not unreasonable for Fontenot to rely on a legal proposition that turned out to be incorrect — a proposition we repeated in multiple cases over six decades and did not disavow until today.

Finally, today's opinion alternatively contends that Fontenot had sufficient notice because at the time of his trial, we had not yet overruled *People v. Martinez* (1999) 20 Cal.4th 225. (Maj. opn., *ante*, at p. 25.) In a single sentence, without elaboration, *Martinez* treated attempted kidnapping as a lesser included offense of completed kidnapping. (*Martinez*, at p. 241.) But, as the Attorney General concedes, and as today's opinion holds, our reasoning in *Bailey* as to why attempted escape is not a lesser included offense of escape fatally undermined that portion of *Martinez*, which contained no "reasoned consideration" of the issue before us. (Maj. opn., *ante*, at p. 19.) Further, the court acknowledges, "*Martinez* is scarcely different" from *Bailey* in the essential contours of the facts and legal question presented. (*Ibid.*) If the nonpaying parent in *Moss*, a case about child support, could reasonably rely on *Todd*, a case about spousal support, notwithstanding contrary statutes because *Todd*'s logic applied equally to child support (see *Moss*, *supra*, 17 Cal.4th at p. 429), then I see no reason why Fontenot, whose case involves attempted kidnapping, could not reasonably rely on *Bailey*, a case about attempted escape, notwithstanding *Martinez* in light of the court's conclusion that *Bailey*'s logic applies equally to attempted kidnapping.

Readers of today's opinion will no doubt detect a dark irony here. On one hand, the court faults Fontenot for failing to anticipate a change in the law — namely, today's rejection of the qualification of section 1159 repeatedly stated in *Bailey* and prior cases. On the other hand, the court faults Fontenot for correctly discerning a change in the law — namely, the holding and reasoning of *Bailey* that plainly undermined *Martinez*'s treatment of attempted kidnapping as a lesser included offense of kidnapping. It is problematic enough that each of the court's rationales for finding sufficient notice is unpersuasive on its own. But the damned-if-you-do-and-damned-if-you-don't quality of the two rationales together puts an especially fine point on the unfairness of today's decision.

I would reverse Fontenot's conviction because at the time of his trial the kidnapping charge did not provide him adequate notice that he could be convicted of attempted kidnapping. In all other respects, I join the opinion of the court.

**LIU, J.**

**I Concur:**

**GROBAN, J.**

9

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Fontenot
_____

**Unpublished Opinion** XXX NP opn. filed 1/9/18 – 2d Dist., Div. 7
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S247044
**Date Filed:** August 26, 2019
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Gary J. Ferrari

_____

**Counsel:**

Michael Allen and Melissa L. Camacho-Cheung, under appointments by the Supreme Court, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Louis W. Karlin and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Melissa L. Camacho-Cheung
California Appellate Project
520 South Grand Avenue, Fourth Floor
Los Angeles, CA  90071
(213) 243-0300

Robert M. Snider
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 269-6192