Filed 1/12/22  P. v. Welch CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DEON AUSTIN WELCH,

    Defendant and Appellant.

E073394

(Super.Ct.No. BAF1700315)

OPINION

APPEAL from the Superior Court of Riverside County.  Bernard J. Schwartz, Judge.  Affirmed in part; reversed in part and remanded.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Adrianne Denault and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Deon Austin Welch was found guilty of 15 counts of aggravated sexual assault of a minor under the age of 14 years for repeatedly raping his girlfriend's daughter for three years and was sentenced to state prison for 230 years to life. On appeal, he argues: (1) the trial court erred by not instructing the jury on the lesser included offense of statutory rape; (2) the prosecutor committed misconduct during closing arguments; (3) the trial court misunderstood its sentencing discretion when it imposed the maximum restitution and parole revocation restitution fines; (4) his sentence is cruel and/or unusual under the federal and state constitutions; and (5) the errors cumulatively rendered his trial unfair and require reversal. We agree the trial court misunderstood its discretion to take into consideration defendant's ability to pay when imposing a restitution and parole revocation restitution fine above the statutory minimum, and we reverse and remand for the court to exercise that discretion. In all other respects, the judgment is affirmed.

## I.

## FACTS AND PROCEDURAL BACKGROUND[1]

Jane Doe was 16 years old during the trial. She testified that, starting when she was 11 years old and in the 6th grade, defendant raped her numerous times over a three-year period. Defendant impregnated Jane, and she gave birth while she was in the 8th grade and one week before her 14th birthday.

---

[1] Defendant does not challenge the sufficiency of the evidence to support his convictions. Therefore, we need not provide a detailed recitation of the facts. We must construe the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

Jane testified that, at first, defendant started to touch and squeeze her breasts. She tried to pull away from him and said she did not like what he was doing, but he grabbed her tightly. Over time, defendant started to remove Jane's clothing and touch her vagina with his fingers. Finally, defendant began to force himself onto Jane and have intercourse with her. The first time he did so, he got on top of Jane and, when she tried to scream, he covered her mouth so her mother would not hear her. He covered Jane's mouth on many other occasions to prevent her from screaming while he had intercourse with her. If Jane tried to resist defendant, he would grab her and force her or tell her, "Stop, it's going to be ok." On one occasion, when Jane said she did not want to have sex with defendant, he took her phone away. Jane was afraid of defendant because he threatened her and her family, and he said he would hurt her if she told anyone what he had done.

The People charged defendant with 15 counts of aggravated sexual assault of a minor under the age of 14 years in the commission of a rape (Pen. Code,[2] §§ 269, subd. (a)(1), 261, subd. (a)(2), (a)(6), counts 1-15), one count of aggravated sexual assault of a minor under the age of 14 years in the commission of sodomy (§§ 269, subd. (a)(3), 286, subds. (c)(2), (c)(3), (d)(2), (d)(3), count 16), and one count of continuous sexual abuse of a minor under the age of 14 years (§ 288.5, count 17). In addition, the People alleged defendant inflicted great bodily injury upon Jane during the commission of the rape alleged in count 15. (§ 12022.8.) The trial court granted the

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

People's motion to dismiss count 17 in the interest of justice.  (§ 1385.)  The jury found defendant guilty on counts 1 through 15 and found true the sentencing allegation that defendant inflicted great bodily injury during the commission of count 15.  But, it found him not guilty on count 16 (of both the charged offense and the lesser included offense of simple assault).  The trial court selected count 15 as the principal count, and sentenced defendant to state prison for 15 years to life, plus a five-year consecutive term for the great bodily injury finding.  (§§ 269, subd. (b), 12022.8.)  The court also sentenced him to state prison for 15 years to life for each of the remaining 14 counts, to be served consecutively with the term on count 15, for a total sentence of 230 years to life.  (§ 269, subd. (c).)  Relevant here, the court imposed the maximum $10,000 restitution and parole revocation fines.  (§§ 1202.4, subd. (b), 1202.45, subd. (c).)

Defendant timely appealed.

## II.

## DISCUSSION

*A.     The Trial Court Was Not Required to Instruct the Jury on Counts 1 Through 15 on the Lesser Included Offense of Unlawful Sex with a Child.*

Defendant argues that the trial court had a sua sponte duty to instruct the jury on the lesser included offense of unlawful sex with a child, and the court's failure to do so was prejudicial and requires reversal of his convictions on counts 1 through 15 for aggravated sexual assault of a minor under the age of 14 years in the commission of a rape.  Because no substantial evidence was introduced that defendant was only guilty of

4

the lesser included offense, and not guilty of the greater offense, we conclude the trial court had no sua sponte duty to instruct on the lesser included offense.

We review a claim of instructional error de novo. (*People v. Wilson* (2021) 11 Cal.5th 259, 295.) A trial court has a sua sponte duty to instruct the jury on general legal principles that closely and openly apply to the facts presented at trial and are necessary for the jury's understanding of the case. (*People v. Zamudio* (2008) 43 Cal.4th 327, 370.)

"A trial court has a sua sponte duty to instruct the jury on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser, offense. [Citation.] Substantial evidence is evidence from which a jury could conclude beyond a reasonable doubt that the lesser offense was committed." (*People v. Simon* (2016) 1 Cal.5th 98, 132.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*Simon*, at p. 132.) When deciding whether evidence of a lesser included offense is substantial, "a court determines only its bare legal sufficiency, not its weight." (*Breverman*, at p. 177.)

Defendant contends, and the People concede, that applying the accusatory pleading test, unlawful sex with a child (§ 261.5) is a lesser included offense of aggravated sexual

5

assault of a minor under the age of 14 years in the commission of a rape (§ 269, subd. (a)(1)). We agree, but for a different reason. "Two tests have traditionally been applied in determining whether an *uncharged* offense is necessarily included within a charged offense—the statutory or legal 'elements' test and the 'accusatory pleading' test. 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.'" (*People v. Sloan* (2007) 42 Cal.4th 110, 117.) Where, as here, the information "merely 'incorporate[d] the statutory definition of the charged offense without referring to the particular facts' in detail, we 'must rely on the statutory elements' alone." (*People v. Fontenot* (2019) 8 Cal.5th 57, 65.)

Defendant's convictions on counts 1 through 15 for aggravated sexual assault of a minor under the age of 14 years in the commission of a rape required the jury to conclude beyond a reasonable doubt that he raped Jane in violation of section 261, subdivision (a)(2) or (a)(6). (§ 269, subd. (a)(1).) Rape is an unlawful act of sexual intercourse with a person, who is not the perpetrator's spouse. (§ 261, subd. (a).) Section 261, subdivision (a)(2), provides that an act of sexual intercourse is rape when it is accomplished against the victim's will "by means of force, violence, duress, menace,

or fear of immediate and unlawful bodily injury."[3]  Section 261, subdivision (a)(6), provides that an act of sexual intercourse is rape when it "is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat."[4] In contrast, the offense commonly known as "statutory rape" consists only of unlawful sexual intercourse, by an adult, with a nonspouse minor—it does not require that the act be accomplished against the victim's will by force or other means.[5]  Aggravated sexual assault of a minor cannot be committed without committing an act of sexual intercourse with a nonspouse minor.  Therefore, unlawful sex with a child is a lesser included offense of aggravated sexual assault/forcible rape under the statutory elements test.

Nonetheless, we agree with the People that the trial court was not required to instruct the jury on unlawful sex with a child because the evidence did not merit the jury

---

[3]  An act is against the victim's will if he or she does not consent to it.  (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1095.)  "'[D]uress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted." (§ 261, subd. (b).)  The totality of the circumstances—including the victim's age and relationship to the defendant—are factors to be considered when determining the existence of duress.  (*Ibid.*)  And, "'menace' means any threat, declaration, or act which shows an intention to inflict an injury upon another."  (§ 261, subd. (c).)

[4]  "'[T]hreatening to retaliate' means a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death."  (§ 261, subd. (a)(6).)

[5]  Relevant here, unlawful sexual intercourse with a nonspouse minor, who is more than three years younger than the perpetrator, is a felony/misdemeanor wobbler. (§ 261.5, subd. (c).)

considering the lesser included offense. The evidence showed that defendant forced himself on Jane; had sexual intercourse with her; prevented her from pulling away or screaming when she tried to resist him; punished her by taking her phone away if she said she did not want to have sex with him; and threatened her family and threatened to hurt her if she reported the abuse. No affirmative evidence was introduced that defendant had nonforced, consensual sex with Jane.

Defendant argues that the evidence of the greater offense was not strong because Jane's accounts of what happened to her "were varied and conflicting," and she had "credibility problems." But, when deciding whether the trial court was required to instruct on a lesser included offense, "courts should not evaluate the credibility of witnesses, a task for the jury." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162.) Because the evidence supported the greater offense of aggravated sexual assault of a minor under the age of 14 years in the commission of a rape, and not the lesser included offense of statutory rape, we find no error.

### B. The Prosecutor Did Not Err During Closing Argument.

Defendant argues the prosecutor committed prosecutorial misconduct during closing arguments by telling the jury that Jane's pregnancy was "compelling" and "powerful" evidence that defendant had raped her. We find no error.

As our Supreme Court has stated, the term "'"misconduct"'" is inapt to the extent it suggests the claim of error only applies when the prosecutor acts "'with a culpable state of mind.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.) "'A more apt description of the transgression is prosecutorial error.'" (*Id*. at p. 667.) "Such error

8

occurs, as a matter of state law, when a prosecutor 'engage[s] in deceptive or reprehensible tactics in order to persuade the trier of fact to convict.' [Citation.] Federal constitutional error occurs only when the prosecutor's actions 'comprise a pattern of conduct that is serious and egregious, such that the trial is rendered so unfair that the resulting conviction violates the defendant's right to due process of law.' [Citation.] 'In order to be entitled to relief under state law, defendant must show that the challenged conduct raised a reasonable likelihood of a more favorable verdict.' [Citation.] Under federal law, relief is not available if 'the challenged conduct was . . . harmless beyond a reasonable doubt.'"[6] (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854.)

"A criminal prosecutor has much latitude when making a closing argument. Her argument may be strongly worded and vigorous so long as it fairly comments on the evidence admitted at trial or asks the jury to draw reasonable inferences and deductions from that evidence." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1330.) The prosecutor errs when he or she mischaracterizes the evidence. (*People v. Hill* (1998) 17 Cal.4th 800, 823.) "A prosecutor's 'vigorous' presentation of facts favorable to his or her side 'does not excuse either deliberate or mistaken misstatements of fact.'" (*Ibid.*) Likewise, a prosecutor errs by misstating the law. (*People v. Fayed* (2020) 9 Cal.5th 147, 204.)

---

[6] Defendant concedes he did not object to the alleged error and did not request an admonition from the trial court. But, he argues this court can exercise its discretion to review the error or, in the alternative, he argues his trial attorney's failure to object constituted ineffective assistance of counsel. Because we address the merits of this claim, we need not decide whether defendant forfeited it.

"""""When attacking the prosecutor's remarks to the jury, the defendant must show" that in the context of the whole argument and the instructions there was "'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.'"""" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 657.)

The trial court properly instructed the jury with CALCRIM No. 220: the prosecutor had the burden to prove each element of the charged offenses beyond a reasonable doubt. And, the court properly instructed the jury with CALCRIM Nos. 1123 and 1000 on the elements of aggravated sexual assault of a minor under the age of 14 years in the commission of a rape.

During closing argument, the prosecutor told the jury that Jane remained silent about the fact she was being raped by defendant over a three-year period because nobody had believed her. It was only when she became pregnant that "she felt comfortable beginning to tell the truth to people." The prosecutor told the jury that Jane's pregnancy, at the age of 13, was "compelling evidence" because it "tells you that there were rapes happening," and it corroborated Jane's statements and testimony. After discussing the evidence at length, the prosecutor addressed the elements of aggravated sexual assault of a minor under the age of 14 years in the commission of a rape and argued they had been proven beyond a reasonable doubt. The prosecutor argued that Jane did not consent to have sexual intercourse with defendant, but that he used force, fear, or duress to make her submit. The prosecutor did not argue the resulting pregnancy, by itself, established a rape.

10

During rebuttal argument, the prosecutor once more told the jury that Jane's pregnancy was a "compelling nature of [the] evidence," which "makes your job as jurors easy." Finally, to rebut defense counsel's suggestion that Jane's inconsistent statements about being raped was circumstantial evidence, the prosecutor argued, "[W]hat is circumstantial evidence is the DNA of [Jane's] baby. And it is just as powerful as the direct evidence that she testified to that he was raping her." But, again, the prosecutor did not argue Jane's pregnancy alone established the elements of the offense of aggravated sexual assault of a minor under the age of 14 years in the commission of a rape.

Defendant argues the prosecutor's statements about Jane's pregnancy constituted prejudicial error because they "trivialized and oversimplified the elements of the charged offenses and the jurors' required deliberative process." We disagree. The prosecutor did not misstate the elements of the offense or suggest the resulting pregnancy was sufficient evidence to establish defendant had raped Jane. To the contrary, the prosecutor explicitly addressed the legal elements of the offense and argued that the evidence established beyond a reasonable doubt that Jane did not consent to have sexual intercourse with defendant. The prosecutor's characterization of the pregnancy as "compelling" and "powerful" was made primarily in the context of addressing questions about Jane's credibility and, at most, the prosecutor argued the pregnancy corroborated her direct statements that she had been raped. Because the jury was properly instructed on the

11

elements of the offense, we conclude it is not reasonably probable it understood or applied the prosecutor's statements in an improper manner.[7]

C. *The Trial Court Erred When It Concluded It Could Not Consider Defendant's Ability to Pay the Maximum Restitution and Parole Revocation Restitution Fines.*

Defendant argues the trial court erred during sentencing because it was under the misapprehension that it could not consider his ability to pay when determining whether to impose restitution and parole revocation restitution fines above the statutory minimum. Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, defendant argues the error violated his rights to due process and to be free from excessive fines. We need not reach defendant's constitutional claim. Because the trial court did not understand its discretion to consider defendant's ability to pay, and the record does not clearly indicate the court would have likely imposed the same fine had it understood its discretion, we reverse the fines and remand for the trial court to exercise its discretion. On remand, defendant may present evidence about his current ability to pay.

Section 1202.4 mandates that, absent a compelling or extraordinary circumstance, every defendant convicted of a felony shall pay a restitution fine of no less than $300 and no more than $10,000. (§ 1202.4, subd. (b)(1).) The court may, in its discretion, impose a restitution fine using the following formula: the minimum fine ($300), times the "number of years of imprisonment the defendant is ordered to serve," times "the number of felony

---

[7] We hasten to add that the trial court also properly instructed the jury with CALCRIM No. 104: the closing arguments of counsel were not evidence.

12

counts of which the defendant is convicted." (*Id.*, subd. (b)(2).) The court must also impose a parole revocation restitution fine in the same amount as the restitution fine. (§ 1202.45, subd. (a).) A defendant's inability to pay is not a compelling or extraordinary reason to not impose the restitution fine at all, but it may be considered "in increasing the amount of the restitution fine in excess of the minimum fine . . . ." (§ 1202.4, subds. (c); see *id.*, subd. (d) [listing factors the court must consider when setting restitution fine above the $300 minimum, "including, but not limited to, the defendant's inability to pay"].) The defendant bears the burden of demonstrating he is unable to pay the fines. (*Id.*, subd. (d).)

In its sentencing report, the probation department recommended the trial court impose a restitution fine according to the formula set forth in section 1202.4, subdivision (b)(2). But, because that sum far exceeded the statutory maximum, the department recommended a fine of $10,000. The report indicated defendant's monthly income had been $1,800 and monthly expenses were $1,975, meaning he had a monthly net income of negative $175. However, the department informed the court that inability to pay was not a compelling reason to not impose the fine.

At defendant's sentencing hearing, the trial court indicated it intended to follow the probation department's recommendation and impose a $10,000 restitution fine and a $10,000 parole revocation restitution fine. The prosecutor agreed with the proposed order, but defense counsel asked that, "based on [defendant's] inability to pay," the court impose the $300 minimum. The prosecutor responded that inability to pay is not a reason to impose no fine at all. "I think it should be imposed." The trial court noted, "the

13

restitution fine and the parole revocation fine . . . are not subject to the defendant's ability to pay," so it imposed the maximum fines as recommended.

The record supports defendant's assertion that the trial court was under the misapprehension that it could not consider defendant's ability to pay when deciding whether to impose restitution and parole revocation restitution fines above the statutory minimum. "'"Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion."'" (*People v. Bell* (2020) 47 Cal.App.5th 153, 198-199, quoting *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) We must remand for the trial court to exercise its informed discretion unless the court clearly indicated it would have imposed the same restitution fine even if it had the discretion to consider defendant's inability to pay. (See *Bell*, at p. 199.)

We find nothing in the record that clearly indicates the trial court would have imposed the maximum restitution and parole revocation restitution fines even if it had the discretion to consider defendant's inability to pay. Neither the probation department in its sentencing report nor the prosecutor during the sentencing hearing addressed the relevant factors the court must consider when imposing a restitution fine above the $300 minimum, and the trial court did not address them either. While it is possible the court might have still imposed the maximum fines even after considering the defendant's ability to pay, the record is silent on the matter. Therefore, we reverse the restitution and parole revocation restitution fines and remand for the trial court to consider the factors

14

listed in section 1202.4, subdivision (d), including defendant's ability to pay. Defendant shall be permitted at that time to present evidence about his present ability to pay.

> D.    *Defendant's Sentence Is Not Cruel and/or Unusual.*

Next, defendant argues his sentence of 230 years to life, which will necessarily exceed his natural life, serves no valid purpose and is, therefore, cruel and/or unusual under the federal and California constitutions. We disagree.

The Eighth Amendment prohibition on cruel and unusual punishment bars sentences that are grossly disproportionate to the crime. (*Ewing v. California* (2003) 538 U.S. 11, 23-24.) In applying this principle of proportionality, a court begins by comparing the gravity of the offense with the severity of the sentence. (*In re Coley* (2012) 55 Cal.4th 524, 542.) If the comparison leads the reviewing court to draw an inference of disproportionality, it must then compare the sentence to sentences imposed on similar defendants in the same jurisdiction and to the sentences imposed on similar defendants in other jurisdictions. (*Ibid.*) If this inter- and intra-jurisdictional comparison validates the court's initial inference of disproportionality, the sentence is cruel and unusual. (*Ibid.*) Article I, section 17 of the California Constitution, prohibits punishment that is cruel *or* unusual. It bars a sentence that "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.)

Citing life expectancy statistics, defendant—who was 30 years old at sentencing—argues that any state prison sentence of more than 60 years will "likely equate to a life term without the possibility of parole." And, relying exclusively on the separate opinion

15

by the late Justice Stanley Mosk in *People v. Deloza* (1998) 18 Cal.4th 585, 600 (conc. opn. of Mosk, J.) (*Deloza*), defendant argues a sentence that no human being may complete serves no rational or legitimate penological purpose and is per se disproportionate to the crime.

The courts have considered and rejected similar arguments to the one made here. Relying on the concurring opinion in *Deloza*, the defendant in *People v. Byrd* (2001) 89 Cal.App.4th 1373 (*Byrd*) challenged as cruel and/or unusual his sentence of 115 years plus 444 years to life for his conviction of inter alia, robbery, mayhem, and attempted murder, among other crimes. The court was not persuaded. "Preliminarily, we note that 'no opinion has value as a precedent on points as to which there is no agreement of a majority of the court. [Citations.]' [Citations.] Because no other justice on our Supreme Court joined in Justice Mosk's concurring opinion, it has no precedential value. [¶] In any event, we respectfully disagree with Justice Mosk's analysis. In our view, it is immaterial that defendant cannot serve his sentence during his lifetime. In practical effect, he is in no different position than a defendant who has received a sentence of life without possibility of parole: he will be in prison all his life. However, imposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel or unusual punishment under either our state Constitution [citation] or the federal constitution." (*Byrd*, at p. 1383.) In addition, the court found that the sentence *did* serve "valid penological purposes" because "it unmistakably reflects society's condemnation of defendant's conduct and it provides a strong psychological deterrent to those who would consider engaging in that sort of conduct in the future." (*Ibid.*)

16

Other courts have likewise rejected the argument, based on Justice Mosk's concurring opinion in *Deloza*, that a prison term that will necessarily exceed the defendant's life is per se cruel and/or unusual. (E.g., *People v. Haller* (2009) 174 Cal.App.4th 1080, 1089-1090 [three strikes sentence of life without the possibility of parole plus 78 years for multiple convictions of making criminal threats and assault with a deadly weapon].) Especially relevant here, the court in *People v. Retanan* (2007) 154 Cal.App.4th 1219 rejected the claim that a sentence of 135 years to life for multiple convictions of aggravated child sexual assault, lewd or lascivious conduct, and other sexual offenses against children was cruel and/or unusual. "California courts repeatedly have upheld such lengthy prison sentences. [Citations.] Defendant was convicted of numerous sex crimes against four young girls, including the rape of a 10-year-old. He attempted to silence two of his victims by threats against the life of the person they loved the most. His many offenses were made possible by exploiting the trust of his victims' parents. [¶] Defendant's sentence is not disproportionate to the offender or the offenses. His claim of cruel and unusual punishment is without merit." (*Id*. at p. 1231.)

We agree with the decisions just discussed. Justice Mosk's concurring opinion in *Deloza* has no precedential value and is not binding on this court. (*Byrd*, *supra,* 89 Cal.App.4th at p. 1383.) Nor are we persuaded that, in an appropriate case such as this, where the defendant was convicted of multiple aggravated sex crimes against a minor, a sentence that will exceed the defendant's natural life can serve no useful or valid penological purpose and is disproportionate to the offense. Therefore, we must conclude defendant's sentence is not cruel and/or unusual.

*E.     No Cumulative Error.*

Finally, defendant argues the cumulative effect of the alleged errors rendered his trial unfair and requires reversal.  Except for the sentencing error we have identified with respect to the restitution and parole revocation restitution fines, for which we reverse and remand, defendant has established no error, prejudicial or otherwise.  "[T]here is no prejudice to cumulate."  (*People v. Wall* (2017) 3 Cal.5th 1048, 1072.)

III.

DISPOSITION

The restitution and parole revocation restitution fines are reversed, and the matter is remanded for the trial court to consider all relevant factors, including defendant's ability to pay, when determining whether to impose fines above the statutory minimum.

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER                    
                                                          Acting P. J.

We concur:


FIELDS                          
                      J.


MENETREZ                    
                      J.

18