Filed 2/5/25  P. v. Ibarra CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063475 |
| v. | (Super. Ct. No. RIF2203274) |
| FERNANDO RIOS IBARRA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Cheryl Mills, Judge. (Retired judge of the Contra Costa Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed and remanded with directions.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Fernando Rios Ibarra was sentenced to an indeterminate life term after a jury found him guilty of kidnapping for rape, assault with the intent to commit rape, and forcible sexual penetration. On appeal, he contends: (1) there is insufficient evidence to support his kidnapping conviction, (2) the trial court erred in imposing a full consecutive sentence on the penetration count, and (3) the imposition of certain fines and fees violated his due process rights. We reject these contentions and affirm the judgment. However, we remand with directions for the trial court to modify the minute order of the sentencing hearing to accurately reflect the court's oral pronouncement of judgment.

## STATEMENT OF FACTS

On May 17, 2022, Jane Doe (Jane) was a 21-year-old single mother who was living with her father in Riverside. She was also struggling with schizophrenia. Following an argument with her father, she was arrested and taken into custody for vandalizing the tires on his and her aunt's cars. She was released from the Riverside county jail at around 3:45 a.m. the next morning, May 18.

Lacking money or transportation, Jane set out to walk from downtown Riverside to her aunt's house in Eastvale. About 10 minutes into her journey, Ibarra, a 47-year-old homeless man, approached her on his bicycle and engaged her in friendly conversation. Jane, who was only about five foot three and a hundred pounds, felt uncomfortable talking to Ibarra. But she was polite to him as he rode alongside her on his bicycle.

As they continued along, they ended up on a public bike trail that runs along the Santa Ana riverbed. At one point on the trail, Ibarra let Jane ride his bicycle, which she appreciated because she was getting tired of walking. However, while she was riding the bike and Ibarra was jogging

2

alongside her, Ibarra touched her buttocks. Jane did not say anything for fear of making Ibarra angry, but she did give him a disapproving look.

After that, Ibarra grabbed Jane by the waist and pulled her off the bicycle and onto the ground beside the trail. Jane wrestled with Ibarra to get free, but he overpowered her and dragged her down the hill on the side of the trail. They ended up by a fence near the riverbed, about 19 to 35 feet from the bike trail.

Jane could see houses in the distance, on the other side of the fence. However, Ibarra pinned her against the fence from behind and used his bodyweight to keep her from getting away. Then he pulled down her pants and underwear, spread her legs apart, and tried to rape her. That effort failed because Ibarra could not obtain an erection. Even after he rubbed his penis on Jane's buttocks and vagina and commanded her to fondle his genitals, he could not get an erection. He did, however, insert his finger into her vagina at one point.

During the attack, Jane managed to call 911 on her phone. Although Ibarra was hitting her on the head and trying to take her phone away, she could be heard begging Ibarra not to rape her before the call cut out. Eventually, Ibarra abandoned the assault and fled the scene. Jane then redialed 911 and reported what had happened.

Because Jane did not know exactly where she was, it took the police some time to find her. When they did, they noticed she was crying and distraught, and she had multiple abrasions on her arms and legs. A sexual assault exam revealed a small amount of sperm on Jane's vagina that was linked to Ibarra by DNA testing.

Ibarra was arrested after Jane identified him from a photographic lineup. He was charged with kidnapping for rape (count 1),

3

assault with the intent to rape (count 2), and sexual penetration by force (count 3). (Pen. Code, §§ 209, subd. (b)(1), 220, subd. (a)(1), 289, subd. (a)(1)(A).)[1]

At trial, Ibarra admitted getting into a physical altercation with Jane on the bike trail and forcibly dragging her down the hill to the riverbed. However, he claimed he only did so because she tried to steal his bicycle. He denied trying to rape Jane or sexually assaulting her in any fashion. But, in speaking with the police about the incident before trial, Ibarra conceded he tried to have intercourse with Jane and that he put his finger inside her vagina.

The jury convicted Ibarra as charged. In a bifurcated proceeding, the trial court then found Ibarra had suffered a prior serious felony for purposes of the Three Strikes law. (§§ 667, subds. (c)(2), (e)(1), 1170.12, subd. (c)(1).) The court also found as aggravating circumstances that Ibarra was on post-release community supervision at the time of the offenses and that he had previously served a term in prison. (Cal. Rules of Court, rules 4.421(b)(3), (4).) In light of Ibarra's prior record and the seriousness of his present crimes, the trial court sentenced him to an aggregate term of 30 years to life in prison.

## DISCUSSION

### I.

#### SUFFICIENCY OF THE EVIDENCE

Ibarra contends the evidence does not support his conviction for kidnapping because there is insufficient evidence that (1) he had the intent to

---

[1] Unless noted otherwise, all further statutory references are to the Penal Code.

rape Jane at the time he moved her from the bike trail to the riverbed, and (2) he moved her a substantial distance. For the reasons explained below, we find both contentions unpersuasive.

A. *Standard of Review*

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to "review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

In so doing, we do not reweigh the evidence or reevaluate the credibility of the trial witnesses; rather, "[w]e presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Lindberg, supra*, 45 Cal.4th at p. 27.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [it]."'" (*People v. Cravens* (2012) 53 Cal.4th 500, 508; *People v. Montanez* (2023) 91 Cal.App.5th 245, 270.)

B. *Intent Requirement*

To convict Ibarra of kidnapping for rape, the jury had to find he harbored the intent to rape Jane when he moved her from the bike trail down the hill to the riverbed. (*People v. Laursen* (1972) 8 Cal.3d 192, 198; CALCRIM No. 1203.) Ibarra claims that was not his intention at that time,

5

and the only reason he grabbed Jane and forcibly removed her from his bike was that he feared she was going to steal it. Then, once they ended up on the ground on the side of the bike trail, it was Jane's struggling to get away and the slippery slope of the hill that caused them to tumble down to the riverbed. In other words, Ibarra contends Jane's movement from the trail down to the riverbed was largely a consequence of her own actions and not something he did for the purpose of sexually assaulting her.

That said, Ibarra acknowledges the jury rejected his trial testimony on this point and found Jane's version of events to be more credible. We are not at liberty to revisit that credibility determination. Instead, we must indulge every reasonable inference in favor of the judgment below. (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.) The record shows that even before Ibarra forcibly removed Jane from his bike, he made an unwelcome sexual advance toward her by touching her buttocks. Then, while they were fighting in the dirt on the side of the trail, he grabbed her and dragged her down to the riverbed, where he forced himself on top of her, pulled down her pants and underwear, tried to rape her, and penetrated her vagina with his finger.

These actions are clearly sufficient to support a finding that Ibarra intended to rape Jane when he moved her from the trail down the hill to the riverbed. Indeed, the fact Ibarra attempted to rape Jane after moving her away from the trail is compelling evidence that was his reason for moving her in the first place. (Cf. *People v. Abilez* (2007) 41 Cal.4th 472, 508 [there is no better proof that the defendant entered the victim's house to commit robbery than the fact that he actually did so upon entry].) We find no reason to disturb the jury's finding to that effect.

6

*C. Asportation Requirement*

Ibarra also challenges the sufficiency of the evidence to support the jury's finding that he moved Jane a substantial distance for purposes of the kidnapping for rape charge. We conclude the record contains ample evidence to support this finding too.

The asportation element of kidnapping for rape requires proof the defendant moved the victim a substantial distance, meaning the movement was not merely incidental to the intended rape, and it increased the victim's risk of harm over and above that necessarily inherent in that offense. (§ 209, subd. (b)(2); *People v. Martinez* (1999) 20 Cal.4th 225, 233–235, overruled on other grounds in *People v. Fontenot* (2019) 8 Cal.5th 57, 70; CALCRIM No. 1203.)

Factors bearing on the asportation element include the scope and nature of the movement and whether it lessened the chances of detection or enhanced the defendant's opportunity to commit additional crimes. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1151–1152.) Although the actual distance of the movement is relevant, no minimum distance is required. "Measured distance . . . is a relevant factor, but one that must be considered in context, including the nature of the crime and its environment." (*Id.* at p. 1152) "Application of these factors in any given case will necessarily depend on the particular facts and context of the case." (*Id.* at p. 1153.)

Ibarra asserts that moving Jane a total of 19 to 35 feet away from the bike trail and down the hill to the riverbed did not materially increase her risk of harm because they were in a relatively secluded area on the bike trail to begin with, it was dark outside, and Jane was still able to use her phone during the attack. We disagree. If Ibarra had attacked Jane on the bike trail, instead of moving her down to the riverbed, anyone passing by on

the trail at that time would have been able to see what was transpiring and assist her, either by intervening on her behalf or calling the police. Indeed, the mere appearance of a third-party witness might have been enough to cause Ibarra to abandon his attack and flee the scene.

Granted, the attack happened at around 5:00 a.m. But it certainly is not unheard of for people to exercise early in the morning before work, e.g., by walking, jogging, running, or biking on a trail or path. By dragging Jane away from the trail and down to the riverbed, Ibarra substantially reduced the likelihood they would be seen or encountered by others who could come to Jane's aid. And although Jane testified that some houses were visible from the riverbed, there is no indication they were close enough to permit their occupants to see what Ibarra was doing to her in the dark.

All told, there is substantial evidence from which the jury could reasonably find the asportation requirement for kidnapping was satisfied. Although Ibarra did not move Jane a great distance, it was substantial enough to materially decrease the chances of detection and increase her risk of being harmed. We therefore affirm Ibarra's conviction for aggravated kidnapping.

## II.

### CONSECUTIVE SENTENCING

Ibarra also claims the trial court erred in imposing a full consecutive sentence for the forcible sexual penetration offense in count 3. The claim is not well taken.

### A. *Background*

In his sentencing brief below, defense counsel argued the multiple punishment prohibition of section 654 barred punishment on all but

8

one of Ibarra's crimes because they were all motivated by the same objective, i.e., to sexually assault Jane.[2] However, the prosecution argued that section 654 did not apply to the forcible sexual penetration offense in count 3 because the record indicated Ibarra committed that crime as an afterthought, following his failed attempt to rape Jane. The prosecution also pointed out that because Ibarra was convicted of violent sexual offenses, the trial court had discretion to sentence him to full consecutive sentences pursuant to section 667.6, subdivision (c).[3]

At the sentencing hearing, the trial court commented, "I'm very cognizant of the fact that because these are all violent and serious sex offenses, the first option is that there must be consecutive sentencing; however, [section] 654 does play into this." The court then determined that the aggravated kidnapping and the aggravated assault in counts 1 and 2 were indivisible for purposes of section 654. Therefore, after sentencing Ibarra to 14 years to life in prison on count 1, the court stayed execution of his eight year sentence on count 2.

However, the court went on to find the forcible sexual penetration offense in count 3 was separately punishable from the other two offenses. It thus imposed a full consecutive sentence on that count.

_____

[2] Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (*Id.*, subd. (a).)

[3] That statute provides, "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) [including forcible sexual penetration] if the crimes involve the same victim on the same occasion." (§ 667, subd. (c).)

*B. Analysis*

Seizing on the trial court's statement that "there must be consecutive sentencing," Ibarra argues the court sentenced him based on the erroneous assumption that consecutive sentencing was mandated on count 3. In so arguing, Ibarra correctly notes that, although full consecutive sentencing for violent sex offenses is required where the crimes involve separate victims or were committed on separate occasions (§ 667, subd. (d)), that is not the case when, as here, the crimes were committed against the same victim on the same occasion (§ 667, subd. (c)). Ibarra contends the trial court misunderstood this distinction and mistakenly believed that full consecutive sentencing was required on the penetration count, even though he committed that offense against the same victim and on the same occasion as his other crimes.

We cannot agree. First, in reviewing the trial court's oral pronouncement of sentence, we are not limited to the snippet quoted by Ibarra. Viewing the court's comments as a whole, it is clear the court was not operating under an erroneous assumption that it had no choice but to impose consecutive sentences. In the portion of the transcript not cited by Ibarra, the court went on to qualify its statement about mandatory consecutive sentencing by referencing section 654, which generally prohibits multiple punishment when the defendant's crimes were based on a singular act, or they were committed for a singular purpose. (*People v. Corpening* (2016) 2 Cal.5th 307, 311–312.) The fact that the court invoked section 654 to stay Ibarra's sentence on count 2 for assault with the intent to rape demonstrates the court did not believe consecutive sentencing was mandatory.

Moreover, immediately after finding section 654 applicable to count 2, the trial court found consecutive sentencing was warranted on the

forcible sexual penetration offense in count 3 because it was a "separate" offense from the other two crimes Ibarra committed. This factual finding is significant because in cases involving multiple sex crimes, "[e]ven where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006.) "If the rule were otherwise, 'the clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be convicted and punished for every act.'" (*Ibid.*)

In this case, the record contains substantial evidence to support the trial court's determination that Ibarra's commission of the penetration offense was separate from his other offenses, meaning it was neither incidental to nor the means by which he committed the kidnapping for rape and assault with the intent to rape. (See generally *People v. Petronella* (2013) 218 Cal.App.4th 945, 964 [the trial court's application of section 654 will be upheld on appeal if its findings, whether express or implied, are supported by substantial evidence].) Whereas Ibarra committed the kidnapping and assault by dragging Jane down the hill and physically attacking her, he committed the penetration offense by other means. And while the kidnapping and assault occurred close in time to the penetration offense, the latter offense was not incidental to the former ones in the sense it was likely to occur under the circumstances.

Rather, the evidence indicates Ibarra penetrated Jane out of frustration, or as an afterthought, after he was unable to obtain his primary objective of raping her. Under these circumstances, section 654 would not apply to bar punishment on the penetration count. (*People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 819.)

In sum, the trial court's ruling reflects it properly understood that consecutive sentencing is not required in every case in which the defendant commits multiple sexual offenses against a single victim. Indeed, the court's remarks indicate it opted for a full consecutive sentence on count 3 not because such a sentence was mandated under the law, but because the factual circumstances of that offense warranted imposition of that sentence. Given that the court's sentencing decision was factually driven and consistent with the law, we reject Ibarra's contention that it resulted from the court's misunderstanding of its sentencing authority.[4]

## III.

### FINES AND FEES

Lastly, Ibarra contends the trial court erred in ordering him to pay certain fines and fees. Again, we disagree.

*A. Background*

At the sentencing hearing, defense counsel initially asked the trial court not to impose any monetary penalties above the statutory minimum. He then requested the court to strike all such penalties on the basis Ibarra lacked the ability to pay them. However, the court ordered Ibarra to pay "a mandatory restitution fine in the sum of $10,000" under section 1202.4. It also imposed—but stayed—a parole revocation fine of $10,000 pursuant to section 1202.45. And it assessed a court operations fee of

---

[4] Ibarra also claims the trial court may have wrongly double-counted the aggravating circumstances to impose both the upper term and a consecutive sentence on count 3. However, Ibarra forfeited this claim by failing to raise it at the sentencing hearing. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) In any event, there is no evidence the trial court double-counted the multiple aggravating circumstances it found applicable in this case.

$40 and a criminal conviction fee of $30 for each of the three counts on which Ibarra was convicted. (§ 1465.8; Gov. Code, § 70373.)

*B.  Analysis*

Ibarra first takes issue with his $10,000 restitution fine. He correctly points out that although the imposition of a restitution fine was statutorily mandated under section 1202.4, the amount of the fine was not. Instead, the trial court had the authority to impose a fine ranging from $300 to $10,000, depending on his ability to pay and the circumstances surrounding his offenses. (§ 1202.4, subds. (b)–(d).) Because the court described his restitution fine as "mandatory," Ibarra presumes the court incorrectly believed a fine in the amount of $10,000 was required by law.

However, ""a trial court is presumed to have been aware of and followed the applicable law. [Citations.]"" (*In re Julian R.* (2009) 47 Cal.4th 487, 499.) Applying that presumption here, we interpret the trial court's reference to Ibarra's restitution fine as "mandatory" as referring to the fine itself, and not the amount. Although the record is somewhat ambiguous in that regard, the presumption of correctness demands that we give the trial court the benefit of the doubt on this issue. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 398; *People v. Barber* (2020) 55 Cal.App.5th 787, 813–814.) Accordingly, the court's reference to the restitution fine as mandatory is not cause for reversal.

Ibarra also challenges his fines and fees on the basis they are unconstitutional under the reasoning of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). In that case, Division Seven of the Second Appellate District ruled that imposing financial penalties on a criminal defendant without a prior determination of ability to pay violates due process. While recognizing the state has a legitimate interest in imposing

13

revenue-raising fees on people who violate the law, the court stated, "Imposing unpayable fines on indigent defendants is not only unfair, it serves no rational purpose, fails to further [any] legislative [policy], and may be counterproductive." (*Id*. at p. 1167.) *Dueñas* concluded trial courts must conduct an ability-to-pay hearing before imposing financial penalties on a criminal defendant. (*Id*. at p. 1164.)

A number of courts have criticized the soundness of that ruling and rejected the idea that due process is the appropriate measure by which the constitutionality of criminal fines and fees should be assessed. (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946 [*Dueñas* improperly expanded the boundaries of due process]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060 ["*Dueñas* was wrongly decided" and should have based its analysis on the Eighth Amendment's excessive fines clause instead of the due process clause]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1034 (conc. opn. of Benke, J.) [same]; *People v. Caceres* (2019) 39 Cal.App.5th 917, 920 ["the due process analysis in *Dueñas* does not support its broad holding"].) Having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, the California Supreme Court is poised to provide guidance on these issues.

In the meantime, we are convinced that even if *Dueñas* were correctly decided, that decision is factually distinguishable from the case at hand. In *Dueñas*, the defendant was a poor woman who had suffered an array of "cascading consequences" because she could not afford to pay various fines and fees that were leveled against her for committing minor offenses related to her indigency. (*Dueñas, supra*, 30 Cal.App.5th at p. 1163.) Not only did she lose her driver's license, she was subjected to additional jail time and the prospect of civil collection efforts, all because she lacked the means to pay her

14

initial financial penalties. (*Id.* at pp. 1161–1164.) Given that her criminal history stemmed largely from the lack of monetary resources, the *Dueñas* court determined there was no rational basis for subjecting her to additional financial penalties in her current case, and the trial court's decision to do so therefore violated due process.

Although Ibarra is an indigent repeat offender, there is nothing in the record suggesting his recidivism was attributable to any financial penalties he was ordered to pay in his prior cases. That is a key point of distinction from *Dueñas*, in which the financial penalties triggered by the defendant's initial crimes had severe consequences on her daily life and created the conditions that contributed to her current offense. (See *People v. Caceres, supra*, 39 Cal.App.5th at pp. 923–924, 928 [distinguishing *Dueñas* on that basis]; *People v. Kopp, supra*, 38 Cal.App.5th at p. 95, review granted [same].) We reject Ibarra's due process claim.

We also note that, having been sentenced to a term of 30 years to life, Ibarra will have the opportunity to pay his financial penalties by working in prison. Although Ibarra claims there is nothing in the record to suggest he has the physical capacity for prison work, we disagree. The evidence showed Ibarra rode his bike and then jogged next to Jane for quite some time before launching a fierce physical attack on her. From this, we can reasonably infer he is physically capable of performing some kind of job in prison. Accordingly, to the extent it was error for the court not to inquire into Ibarra's ability to pay, any such error was harmless. (*People v. Aviles, supra,* 39 Cal.App.5th at pp. 1075–1076; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505; *People v. Hennessey* (1995) 37

Cal.App.4th 1830, 1837; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1486–1487.)

One final point. As the Attorney General correctly notes, the clerk's minute order of the sentencing hearing does not accurately reflect the trial court's oral pronouncement of sentence. Because the oral pronouncement controls, we will order a modification of the minutes to conform to the court's sentencing decision. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Mesa* (1975) 14 Cal.3d 466, 471–472.)

## DISPOSITION

The judgment is affirmed. The matter is remanded for the trial court to modify the minute order of September 8, 2023, to reflect the court ordered Ibarra to pay a restitution fine of $10,000 (§ 1202.4), a stayed parole revocation fine of $10,000 (§ 1202.45), a court operations fee of $120 (§ 1465.8), and a criminal conviction fee of $90 (Gov. Code, § 70373).

GOODING, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.

16